George P. SHULTZ, Secretary of Labor,
Plaintiff-Appellant, Cross-Appellee,

v.

LOCAL UNION 6799, UNITED STEEL-
WORKERS OF AMERICA, AFL–CIO,
et al., Defendants-Appellees, Cross-Ap-
pellants.

Nos. 24759, 24800.

United States Court of Appeals,
Ninth Circuit.

May 8, 1970.

Ralph A. Fine (argued), Robert V. Zener, Dept. of Justice, Washington, D. C., Wm. Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., for plaintiff-appellant, cross-appellee.

Michael H. Gottesman (argued) of Bredhoff, Gottesman & Cohen, Washington, D. C.; Jerome Smith, of Arnold, Smith & Schwartz, Los Angeles, Cal., Bernard Kleiman, Chicago, Ill., Carl Frankel, Pittsburgh, Pa., for defendants-appellees, cross-appellants.

Before BARNES, KOELSCH and KIL- KENNY, Circuit Judges.

KOELSCH, Circuit Judge.

The Secretary of Labor brought this action in the district court pursuant to § 402(b) of the Labor Management Reporting and Disclosure Act against Local Union 6799, United Steel workers of America, to secure judgment setting aside an election of officers and directing the Local to conduct a new election under supervision of the Secretary.

That section authorizes the Secretary to commence and prosecute such an action on timely complaint of a union member who has exhausted the available internal remedies afforded by the union whenever the Secretary, upon an investigation, finds probable cause to believe that the election was not in compliance with Section 401 of the Act; Section 402(c) empowers the court to order a new election if it finds the violation "may have affected the outcome of an election." [1]

The Secretary asserted three separate claims;

(1) that a rule of the International, applicable to all locals, including Local 6799, prescribing qualifications for candidate eligibility, exceeded the permissible limits of provisions in Section 401(e) and tainted the whole election, thus requiring a complete new election for all officers;

(2) that the eligibility rule (even if valid) was not uniformly applied, as required by Section 401(e), to prospective candidates for the office of Financial Secretary, thus requiring a new election for that office;

(3) that the International had used union funds to promote the candidacy of one of the candiates for the office of President in violation of Section 401(g), thus requiring a new election for that office. [2]

The district court allowed the International Union to intervene and, after a hearing, held the election invalid solely as to the office of president. Judgment was entered ordering a limited new election. The matter is here on the Secretary's appeal and the union's cross-appeal.

[1]. Section 402 (29 U.S.C. § 482) provides:
"(a) A member of a labor organization —(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 (section 401) of this title * * *.
(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization * * * to set aside the invalid election * * *.
(c) If, upon a preponderance of the evidence after a trial upon the merits, the court finds * * * (2) that the violation of section 481 (section 401) of this title may have affected the outcome of an election, the court shall declare the election * * * to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization, * * *."

[2]. Section 401 (29 U.S.C. § 481) provides:
"(e) In any election * * * a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject * * * to reasonable qualifications uniformly imposed).
* * *
(g) No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.

Appellees make a threshold objection to the consideration of the Secretary's appeal. They urge that the Secretary lacked standing to assert the two Section 401(e) claims upon which judgment went against him. Their contention, in substance, is: that Section 402 of the Act does not permit the Secretary to allege a particular violation of Section 401 in a suit to set aside an election unless a union member first unsuccessfully protests that violation to the union and that this statutory precondition was not met. The Secretary, although conceding that the union member's protest was silent as to any 401(e) violation, argues that this fact is immaterial; his position is that Section 402 imposes no such limitation but permits the Secretary to assert any violation of Section 401 disclosed by his own investigation even though not so protested by the union member.[3]

The issue poses difficult problems and any answer is not entirely free of doubt; however, we are convinced and therefore conclude that Congress intended to empower the Secretary to assert those violations that are fairly apparent from a member's protest to the union and no others.[4]

Section 402 is ambiguous. Its exhaustion of remedies precondition logically suggests that the union must be afforded fair notice of the purported wrong and a reasonable time ["three calendar months" is the period designated in 402 (a) (2)] to take corrective measures through its own internal machinery before complaint may be filed with the Secretary;[5] yet the section also provides that the complaint (to the Secretary) may allege "any" violation and the Secretary must bring a civil action to set aside the invalid election within sixty days after receiving the complaint. To allow the Secretary wide ranging power to urge "any" violation would in effect nullify the exhaustion requirement; not only might the union be completely unaware of the asserted violation prior to the suit but, even if the Secretary gives notice before filing suit, the "three calendar months" period allowed for corrective action by the union would be rendered virtually meaningless. However, if the broad language appearing in the section is more narrowly construed, these inconsistencies disappear and the several provisions become harmonious.[6]

Moreover, we believe the background and legislative history of the Act also support our construction. As said in Wirtz v. Local 153, Glass Bottle Blowers Association of United States and Canada,

3. The sole member-protest of the election to either the local or international union was made by Nicholas Hantzis, a candidate for the office of president of the Local; his protest concerned an alleged diversion of union funds to defray expenses of Kenneth Rose, the incumbent president, in conducting his successful campaign for reelection. The Secretary acknowledged that this protest did not afford the unions "fair notice" that the union's candidacy eligibility requirement might be invalid or that it was not uniformly imposed; he further acknowledged that Hantzis made no demand on the union to act on those matters.

4. Both parties rely on and quote extensively from Wirtz v. Local Union etc. Laborers Union, 389 U.S.. 477, 88 .S.Ct. 639, 19 L.Ed.2d 716 (1968). But in that decision the Court declined to express an opinion on the subject, and was careful to so note.

5. The Court's observation in Wirtz v. Local 153, Glass Bottle Blowers Association of the United States and Canada, 389 U.S. 463, 472, 88 S.Ct. 643, 649 (1968) is relevant; "The stated commitment is to postpone governmental intervention until the union is afforded the opportunity to redress the violation."

6. Section 601 should also be noted. Although vesting the Secretary with broad powers to conduct, on his own initiative, investigations into union affairs, it does not authorize him to commence an action even if his investigation leads him to believe a union is violating the Act. He may only report the matter to interested persons. Wirtz v. Local Union etc. Laborers Union, 389 U.S. 477, 482 f.n. 5, 88 S.Ct. 639.

**972**

AFL-CIO, 389 U.S. 463, 470, 88 S.Ct. 643, 648, 19 L.Ed.2d 705 (1968):

> "Title IV's special function in furthering the overall goals of the LMRDA is to insure 'free and democratic' elections. The legislative history shows that Congress weighed how best to legislate against revealed abuses in union elections without departing needlessly from its long-standing policy against unnecessary governmental intrusion into internal union affairs. The extensive and vigorous debate over Title IV manifested a conflict over the extent to which governmental intervention in this most crucial aspect of internal union affairs was necessary or desirable. In the end there emerged a 'general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts.' " [7]

■ We turn to the union's appeal. The agreed facts fully justify the district court's finding of a union violation of Section 401(g) with respect to the election for the office of president. They disclose that the International donated materials, secretarial help and the use of its facilities to print advertising leaflets for Kenneth Rose, the Local's incumbent president, which Rose used in conducting his successful campaign for reelection.

The expense was undoubtedly "minimal," as appellees argue, but it nevertheless reflected the outlay of a sensible sum of union money. Indeed the International, shortly after the Secretary began his investigation and made known his interest in the matter, presented Rose a bill for $13.04, which he immediately paid.

The legislative history of the Act does not indicate that Congress intended to place a limit on the amount that a union might lawfully spend to aid a candidate for office or that it meant to encourage troublesome factual disputes over how much (or little) money constitutes a "de minimis" amount; and the language of the provision itself is clear and unambiguous. It provides in terms that "no moneys" of a union shall be spent to promote the candidacy of any person for union office.

Likewise unconvincing is appellees' argument that a union is not in violation unless it grants the request of one candidate for financial aid and rejects that of another. Granted that the object of the section is to prohibit discrimination between candidates and that this condition would not exist if a union contributed equally to all candidates for a particular office, the inference is plain that the unlikely probability of even handed union financial aid to several candidates, as well as financial aid to an individual candidate, is equally prohibited. Congress declared in the second of the two sentences comprising the provision that "Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates and other expenses necessary for the holding of an election."

■ We also approve, as not "clearly erroneous" the district court's companion finding that the violation "may have affected" the outcome of the presidential election. The financial aid was reflected in the form of three separate campaign dodgers or pamphlets; in all some 1200 were printed; obviously they were cal-

---

7. Since we hold that an accommodation of the public interest and union autonomy can best be achieved by requiring a member to invoke a union's internal remedies before the Secretary can act, we deem it immaterial that in this case the Local had notice from the Secretary of the two asserted violations for more than ninety days before he commenced this action.

Neither are we persuaded by the Secretary's argument, that affirmance of the judgment ordering a new election for president under the supervision of the Secretary, requires a present judicial determination of the validity of the candidate-eligibility rule. If, as we concluded, the issue is not properly before the court, an opinion on that matter would be merely advisory.

culated to secure voter support for Rose. Although the record does not disclose the approximate number circulated and posted, it is clear that many were. Whether they produced the desired result is of course impossible to determine, but proof of that fact is not required. Wirtz v. Hotel, Motel & Club Employees Union, Local 6, 391 U.S. 492, 505–508, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968). However, it does appear that the number of dodgers was double that of the Local's membership and that Rose won the election by a narrow margin. Thus it is not improbable that the financial aid "may have affected" the election.

The judgment is affirmed.