411 F.Supp. 801 (1976)
John T. DUNLOP, Secretary of Labor, U. S. Department of Labor, Plaintiff,
v.
STOVE, FURNACE & ALLIED APPLIANCE WORKERS INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO, Defendant.
No. 75-388C(A).
United States District Court, E. D. Missouri, E. D.
February 12, 1976.
*802 Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for plaintiff.
Harold Gruenberg, St. Louis, Mo., for defendant.

MEMORANDUM OPINION
HARPER, Senior District Judge.
This action was brought by plaintiff, the Secretary of Labor, against the defendant, Stove, Furnace & Allied Appliance Workers' International Union of North America, AFL-CIO (hereinafter referred to as the Union), for alleged violations of section 401(g) of Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (hereinafter referred to as the Act), 29 U.S.C. § 481(g). Plaintiff seeks to have the election of all officers of the defendant elected July 19, 1974, except the Fourth Vice-President, declared null and void. Plaintiff further seeks to have a new election conducted for all offices, except that of the Fourth Vice-President, under the supervision of the plaintiff. This Court has jurisdiction under 29 U.S.C. § 482(b).
Count VIII of plaintiff's complaint alleges that plaintiff conducted an investigation of a Union member's complaint which resulted in a finding of probable cause to believe that a violation of Title IV of the Act (29 U.S.C. § 481 et seq.) had occurred and had not been remedied at the time of the institution of this action.
Count IX alleges that the Union violated Section 401(g) of the Act in its election, in that moneys received by defendant by way of dues, assessment, or similar levy, were used to promote the candidacy of certain persons in the election.
Count X alleges that the violation may have affected the outcome of all offices of the Union by its election of July 19, 1974, except that of the Fourth Vice-President.
This cause was submitted to the Court by both parties on the Stipulation of Facts and Exhibits filed by the parties on August 28, 1975 (which Stipulation of Facts and Exhibits is attached to this Memorandum, marked Exhibit A to the Court's Memorandum, and made a part hereof), Exhibits 1 through 9, and Defendant's Exhibit A filed on August 27, 1975. The exhibits were offered as joint exhibits of both parties.
The plaintiff's principal contention is that the defendant violated section 401(g) of the Act when it applied moneys which it received by way of dues, assessment, or similar levy, to the publication of its "Officers' Reports" book which the plaintiff alleges promoted the candidacies of certain persons in the defendant's officer election on July 19, 1974.[1] Section 401(g) of the Act provides:
"No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election."
In its proposed conclusions of law, the defendant conceded that it had committed only a "technical" violation of Section 401(g) of the Act:
"2. Defendant's payment from its general funds for the report of its retiring *803 president containing his recommendations for named individuals to specific offices in Defendant constituted a technical violation of Section 401(g) of the LMRDA."
Further evidence of defendant's concession is seen in paragraphs 6 and 8 of the Stipulation of uncontested facts (Court's Exhibit A to Memorandum). However, in its post trial briefs, the defendant denies that it has committed any violations of the Act. The defendant argues that none of those recommended in the "Officers' Reports" book (with the single exception of a Mr. Pierson), had officially announced their candidacy at the time the delegates received their books on the first day of the convention. However, it makes no difference if the recommended candidates had not been officially nominated as of the time of the recommendation. Brennan v. Sindicato Empleados de Equipo Pesado, Construccion Y Ramas Anexas de Puerto Rico, Inc., 370 F.Supp. 872 (D.Puerto Rico 1974). The defendant further states that the recommendations of the Union's president of candidates within the "Officers' Reports" book constituted a proper exercise of his right to express his view upon candidates in the Union election under the provisions of Section 101(a)(2) of the Act, 29 U.S.C. § 411(a)(2). That section states:
"Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions, and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings * * *."
While it is true that the Union's president may be entitled to express his views upon candidates at the Union's election, it is also true that "every member" of the Union has that same right. Here, it was uniquely within the authority of the Union president to extend an invitation to all other Union delegates to exercise this right at the convention. However, no such invitation was ever extended. Therefore, the unilateral conduct of the defendant, in circumstances such as these, constitutes a violation of Section 401(g) of the Act because the Union failed to extend an equivalent offer to other delegates or candidates. Ibid.
The plaintiff is not entitled to an order for a supervised election unless it can show by a preponderance of the evidence that the Union's violation "may have affected the outcome" of the election of July 19, 1974. Section 402(c), 29 U.S.C. § 482(c).
However, the Supreme Court has held that once a violation of Section 401 has been proven, the existence of that violation establishes a prima facie case that the defendant's violation "may have affected the outcome" of the election. Wirtz v. Hotel, Motel & Club Employees, Local 6, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968). Here, the defendant has, by its own admission, committed a violation of Section 401(g) of the Act. Therefore, the burden of producing evidence shifts to the defendant to present sufficient evidence that the violation did not affect the outcome of the election. Id. at 508-509, 88 S.Ct. at 1752-1753, 20 L.Ed.2d at 775.
The plaintiff contended that the "Officers' Reports" book "* * * may well have had and probably did have a chilling effect on other aspirants to office and their supporters." The defendant contends that the following evidence rebuts this contention: First, the delegates nominated candidates in opposition to those recommended by the Union president for three out of the eight offices; second, votes for nominated candidates at the convention were made by secret ballot; third, two of those three contested offices were won by candidates whom the Union president had not recommended; and fourth, the plaintiff's concession that the office of Fourth Vice-President may not have been affected is proof that none of the eight offices may have been.
The defendant's contentions assume that every delegate nominated (or at least *804 acquiesced in someone else's nomination) his own personal choices in the election. However, this is pure conjecture and not evidence. The evidence is, however, that out of those eight candidates recommended for office, six were ultimately elected. Five of those six candidates ran unopposed and were elected by acclamation. The possibility exists, therefore, that at least some delegates were discouraged through fear, futility or some other force from nominating one or all of their own personal choices for office. If the defendant's violation may have had a chilling effect on at least some delegates, it is logical to infer that some or all of the candidates who might have been nominated might also have been elected. See, Id. at 508, 88 S.Ct. at 1752, 20 L.Ed.2d at 775. Hence, it is unnecessary to discuss each of the defendant's contentions individually. Nevertheless, the Court has a final word to say with respect to the defendant's fourth contention. The defendant argues that it is illogical for the plaintiff to claim that the office of Fourth Vice-President was unaffected while all other offices were affected because all improper motivations to nominate or vote would have a common cause in the "Officers' Reports" book. The defendant claims, therefore, that if one office is not affected, none were. The Court agrees with this argument but disagrees with the defendant's proposed conclusion. If seven offices within the election were affected, then they all were. An election which has been conducted with violations of the Act which may have affected the outcome as to one office, is consequently void as a whole. Wirtz v. Local Union 169, International Hod Carriers, Etc., 246 F.Supp. 741, 754 (D.Nev.1965).
Although plaintiff does not seek to have the office of the Fourth Vice-President declared null and void,[2] the Court is of the opinion that it must be so declared. The relief to be granted to a prevailing party is not determined by what the party has demanded, but rather it is determined by what the facts show him legally entitled to. Whittaker v. Wall, 226 F.2d 868 (8th Cir. 1955).
Since the defendant has failed to produce sufficient evidence to overcome the plaintiff's prima facie case, this Court finds that the violation which occurred did affect the outcome of all offices of the Union's election conducted on July 19, 1974.
Accordingly, this Court finds for the plaintiff, Secretary of Labor, and against the defendant Union. The Court directs that the defendant's election of July 19, 1974, for all offices be declared null and void. In addition, the Court directs that the defendant conduct a new election under the supervision of the plaintiff so far as lawful and practicable, in conformity with the Union's Constitution and By-Laws, 29 U.S.C. § 482(c). The Secretary shall promptly certify to this Court the names of the persons elected. This Court will then enter an order declaring such persons elected.
This memorandum opinion is adopted by the Court as its findings of fact and conclusions of law and the clerk of the Court is directed to enter the proper judgment as set out above.

EXHIBIT A

STIPULATION OF FACTS AND EXHIBITS

I
Plaintiff and defendant in the above cause stipulate that the following facts are uncontested and may be read in evidence in this cause:
1. At all times relevant to this action, defendant was a labor organization engaged in an industry affecting commerce within the meaning of §§ 3(i) and 3(j) of the Labor-Management Reporting and Disclosure Act. [29 U.S.C. § 402(i), (j)].
2. Defendant's Constitution requires that a convention be held every three years *805 in the third week of July and that its officers be elected at such convention.
3. Defendant's last convention was held at Chattanooga, Tennessee from July 16, 1974 to July 19, 1974 and that nominations for offices were made and election of officers of defendant were held on July 19, 1974 only.
4. An "Officers' Reports" book is to be prepared by the defendant's officers prior to each convention to be "forwarded . . to the delegates as early as possible before the Convention convenes" by the Executive Secretary-Treasurer as required by defendant's Constitution, Art. V. § 4.
5. That prior to publication, the reports of each officer contained in the "Officers' Reports" booklet were accessible only to International Executive Secretary-Treasurer Chadderton and President Roberts after each officer's report was individually prepared and transmitted to the Secretary-Treasurer for publication.
6. The Officers' Report book for the 1974 convention was paid for from the general funds of the Stove, Furnace and Allied Appliance Workers' International Union of North America. These general funds are made up of dues, assessments, or other similar levies of the members of said union.
7. That the report of each officer contained in the "Officers' Reports" booklet dated July 16, 1974 was not subject to modification, alteration or amendment by any other officer.
8. That James Roberts, retiring International President expressed in his officer's report to the 36th Convention of defendant that he recommended and supported certain incumbent officers and International Representatives as Executive Board members, as set forth at page 4 of the Officers' Reports to the 36th Convention dated July 16, 1974.
9. The delegates to the 36th Convention, there present, were authorized by the Constitution of the International Union to nominate candidates for office and to elect officers from among eligible nominees.
10. That the incumbent officers of defendant were not delegates to the 36th Convention of defendant and had no voting rights in the Convention of defendant.
11. No candidates requested and no candidates were denied an opportunity to have campaign statements or endorsements printed in the "Officers' Report" for the 1974 Convention.
12. That no person other than an officer of defendant has a right to submit any report to the "Officers' Reports" Book.
13. That no offer was made by James Roberts or any other officer of defendant to any prospective candidate or any other Union member to put material in the "Officers' Reports" Book for the 1974 Convention of defendant.
14. That had any member of defendant other than an officer requested the opportunity to place a statement of any kind into the "Officers' Reports" Book for the 1974 Convention, such request would have been denied.
15. In the 18 years of the Presidency of James Roberts, the 1974 convention was the first convention at which he made recommendations as to officers either orally or in the "Officers' Reports" Book.
16. The Officers' Reports for the 1968 and 1971 conventions contain no message of support, campaign statements or recommendations of officers or candidates for office and that the Convention Proceedings for the 1968 and 1971 conventions of Defendant contain no messages of support, campaign statements and recommendations of candidates for office, except for nominating speeches made during that part of the convention's business dealing with the election of officers.
17. That during the period January 1, 1974 to July 16, 1974, inclusive, President James Roberts and International Executive Secretary-Treasurer Melvin T. Chadderton maintained their offices in the Headquarters Building of defendant located at 2929 S. Jefferson Avenue, St. Louis, Missouri; that International Executive Vice President *806 Al Mendoza maintained his office at his residence in Pico Reviera, California; that International First Vice President Henry S. Blair maintained his office at his residence in Nashville, Tennessee; that International Second Vice President George E. Pierson maintained his office in his residence at Bradley, Illinois; that International Third Vice President George E. Sodam maintained his office at his residence in Belleville, Illinois; that International Representative E. Ray Sullivan maintained his office at his residence in Dickson, Tennessee; that International Representative Richard J. Bacher maintained his office at his residence in Hacienda Heights, California; and that International Representative David J. Barks maintained his office at his residence in Hiram, Missouri.
18. That the officers who James Roberts recommended were at the time of said recommendation already holding officer positions or international representative positions on the Executive Board of defendant.
19. That the "Officers' Reports" booklet dated July 16, 1974 was distributed only to delegates at the time of their registration on July 14, 1974 and July 15, 1974 for the Convention of defendant which commenced on July 16, 1974 in Chattanooga, Tennessee and that the "Officers' Reports" booklet was distributed to the officers of defendant on July 14 and July 15, 1974.
20. That the delegates to the 36th Convention of defendant unanimously accepted the "Officers' Reports" as printed (Proceedings, 36th Conv., p. 23).
21. That the Chairman of the 36th Convention of defendant called for nominations for each office three times before entertaining a motion that nominations for an office be closed.
22. That 78 delegates were registered at the 36th Convention of defendant from 32 local union affiliates of defendant having 204 total votes on a per capita basis.
23. There is no stated policy enabling any member to require the Union to finance the printing of a recommendation statement written by any member for purpose of distribution at the Convention.
24. None of the nominees requested or were denied leave to address the 36th Convention but delegates making nominations gave speeches of endorsement on behalf of nominees. All of the candidates endorsed by Retiring International President James Roberts in the 1974 "Officers' Report" book and orally at the 1974 convention was also endorsed in nominating speeches by delegates.
25. Retiring President Roberts told the delegates assembled in the 36th Convention on July 16, 1974 "who you elect is your business" and Roberts orally stated his personal recommendations of individuals for offices in the International Union.
26. Chairman Roberts, after making his oral recommendations at the 1974 International Convention in no way indicated orally that responses to his recommendations or other general recommendation speeches could be made at that or any other time (excluding the nominating speeches).
27. There is no written policy indicating that responsive speeches could be made to the address by the International President.
28. That the delegates to the 36th Convention of defendant voted by secret ballot for their choice of nominees for each contested office.
29. That George E. Pierson was nominated for the office of International President at the 36th Convention of defendant and was elected as reported at pages 50-52 of Plaintiff's Exhibit 4.
30. That Melvin T. Chadderton and Margaret Neely were nominated for the office of International Executive Secretary-Treasurer at the 36th Convention of defendant and that the delegates cast 127 votes for Chadderton and 74 for Neely whereas nominee Chadderton was elected to said position.
31. That Al Mendoza was nominated and was unopposed for the office of Executive Vice President at the 36th Convention of Defendant and was elected by acclamation. No count was taken of the ayes and *807 nays on the motion for election by acclamation.
32. That Henry E. Blair was nominated and was unopposed for the office of First Vice President at the 36th Convention of Defendant and was elected by acclamation.
33. That George E. Sodam was nominated and was unopposed for the office of Second Vice President at the 36th Convention of Defendant and was elected by acclamation.
34. That E. Ray Sullivan was nominated and was unopposed for the office of Third Vice President at the 36th Convention of Defendant and was elected by acclamation.
35. That Richard S. Bacher, who had been recommended for the position of Fourth Vice President in the Officer's Report of President James M. Roberts, was nominated for the position of Fourth Vice President and received 92 delegate votes whereas nominee Thomas Kemme received 104 delegate votes with the result that Thomas Kemme was elected Fourth Vice President at the 36th Convention of defendant.
36. That David J. Barks, who had been recommended for the position of Fifth Vice President in the Officer's Report of President James M. Roberts was nominated for the position of Fifth Vice President and received 74 delegate votes whereas nominee Richard J. Bacher received 122 delegate votes with the result that Richard J. Bacher was elected Fifth Vice President at the 36th Convention of Defendant.
37. On or about September 5, 1974, Mary Holtsclaw, a member in good standing of defendant Union, who was seated as a delegate from Local 100, St. Louis, Missouri, sent a protest complaint to the Stove, Furnace & Allied Appliance Workers' International Union of North America (hereinafter defendant) which was received by defendant a day or two after the postmarked date of September 5, 1974. Mary Holtsclaw protested, inter alia, the "Printing of Officers' report book  36th Convention of Stove, Furnace & Allied Workers International Union of N.A., July 16-19, 1974, Chattanooga, Tennessee, as money from Union dues was used to support and campaign for candidates in this book."
38. That no final decision regarding Mary Holtsclaw's protest was received within three calendar months after said protest was made.
39. That Ms. Holtsclaw filed a timely election appeal with the United States Department of Labor under LMRDA § 402(a)(2) on December 12, 1974.
40. That the Secretary of Labor, in compliance with the LMRDA, made a finding of probable cause to believe a violation of § 481(g), Title 29, United States Code, had occurred regarding the 1974 election of officers by delegates of defendant.

II
Plaintiff and defendant stipulate that the following documents may be offered in evidence without objection by either party:

 Pl. Exh. 1. Constitution of Defendant adopted 1971.
 Pl. Exh. 2. Invoice dated June 28, 1974 from Weiss-Pettus
 Printing Co. for Officers' Reports.
 Pl. Exh. 3. Officers' Reports booklet dated July 16, 1974.
 Pl. Exh. 4. Proceedings of 36th Convention of Defendant.
 Pl. Exh. 5. Deposition of James M. Roberts, taken on August
 13, 1975.
 Pl. Exh. 6. Admissions by defendant.
 Pl. Exh. 7. Ms. Mary Holtsclaw's protest complaint sent to
 the Union on or about September 5, 1974.

*808
 Pl. Exh. 8. Ms. Mary Holtsclaw's protest complaint and cover
 letter to the Department of Labor dated December
 10, 1974.
 Pl. Exh. 9. Letter of March 31, 1975 by William J. Kilberg,
 Solicitor of Labor, which is the Department of
 Labor's finding of probable cause in this matter.
 DONALD J. STOHR
 United States Attorney
 s/ Joseph B. Moore s/ Harold Gruenberg 
 JOSEPH B. MOORE HAROLD GRUENBERG
 Assistant United States Attorney Attorney for Defendant
NOTES
[1] See paragraph 8 in the Stipulation of uncontested facts attached hereto as Court's Exhibit A to Memorandum.
[2] The plaintiff's prayer for relief does, however, request "such other relief as may be appropriate."