547 F.2d 1043
 94 L.R.R.M. (BNA) 2249, 80 Lab.Cas. P 11,832
 William J. USERY, Jr., Secretary of Labor, U. S. Department
of Labor, Appellee,
v.
STOVE, FURNACE & ALLIED APPLIANCE WORKERS INTERNATIONAL
UNION OF NORTH AMERICA, AFL-CIO, Appellant.
 No. 76-1237.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 11, 1976.
Decided Jan. 5, 1977.
 
 Harold Gruenberg, St. Louis, Mo., for appellant.
 Anthony J. Steinmeyer, Atty., Appellate Sec., Civ. Div., Dept. of Justice, Washington, D.C., for appellee; Rex E. Lee, Asst. Atty. Gen., Washington, D.C., Donald J. Stohr, former U. S. Atty., St. Louis, Mo., and Leonard Schaitman, Washington, D.C., Attys., Justice Department, on brief.
 Before VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY and HENLEY, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 We are asked to review a judgment of the District Court for the Eastern District of Missouri which voided the election of the Stove, Furnace and Allied Appliance Workers International Union of North America held in 1974 and ordered a new election. The District Court found that the Union violated § 401(g) of the Labor-Management Reporting and Disclosure Act of 1959,[1] by using Union funds derived from dues and assessments[2] to publish an Officers' Report in which the retiring President recommended the election of eight officers. No other Union members had an opportunity to endorse candidates of their choice at Union expense. The court also found, pursuant to § 402(c) of the Act,[3] that the violation may have affected the outcome of the election.
 
 
 2
 We have little difficulty affirming the District Court's holding that the use of Union funds violated the Act. "(T)he language of the provision itself is clear and unambiguous. It provides in terms that 'no moneys' of a union shall be spent to promote the candidacy of any person for union office." Shultz v. Local 6799, United Steelworkers of America, 426 F.2d 969, 972 (9th Cir. 1970), affirmed on other grounds sub nom., Hodgson v. Local 6799, United Steelworkers of America, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971); Hodgson v. Liquor Salesmen's Union, Local No. 2, 444 F.2d 1344, 1350 (2nd Cir. 1971). Here, moneys taken from Union dues were spent to promote candidates for eight of the nine elective offices. Under the Act, it makes no difference that the amount spent was small. Shultz v. Local 6799, United Steelworkers of America, supra. Nor is the fact that the retiring President acted from the best of motives of any consequence:
 
 
 3
 Congress designed Title IV to curb the possibility of abuse by benevolent as well as malevolent entrenched leaderships.
 
 
 4
 Wirtz v. Hotel, Motel and Club Employees Union, Local 6, 391 U.S. 492, 503, 88 S.Ct. 1743, 1750, 20 L.Ed.2d 763 (1968).
 
 
 5
 We cannot, however, affirm the District Court's holding that the violation may have affected the outcome of each of the races and that a new election must be held for each office.
 
 
 6
 The District Court, following Local 6, held that proof of a violation of § 401 establishes a prima facie case that the outcome of the election may have been affected. It noted that this showing could be overcome by evidence demonstrating that the violation did not affect the result, but held that the Union had failed to produce sufficient evidence for that purpose. It directed that new elections be held for all offices.
 
 
 7
 The Union argues that the prima facie rule is not triggered by every violation of § 401. In particular, they contend that the violation found here should not have that effect, both because the violation was a de minimis one and because it did not involve the exclusion of candidates from the ballot.
 
 
 8
 We look to the language of the Supreme Court in Local 6 for guidance. The Court stated:
 
 
 9
 The Secretary was not entitled to an order for a supervised election unless the enforcement of the bylaws "may have affected" the outcome of the May 1965 election, § 402(c), 29 U.S.C. § 482(c). The "may have affected" language appeared in the bill passed by the Senate, S. 1555. The bill passed by the House, H.R. 8342, and the Kennedy-Ervin bill, introduced in the Senate, S. 505, required the more stringent showing that the violation actually "affected" the outcome. The difference was resolved in conference by the adoption of the "may have affected" language. Senator Goldwater explained,
 
 
 10
 "The Kennedy-Ervin bill (S. 505), as introduced, authorized the court to declare an election void only if the violation of section 401 actually affected the outcome of the election rather than may have affected such outcome. The difficulty of proving such an actuality would be so great as to render the professed remedy practically worthless. Minority members in committee secured an amendment correcting this glaring defect and the amendment is contained in the conference report." 105 Cong.Rec. 19765.
 
 
 11
 The provision that the finding should be made "upon a preponderance of the evidence" was left undisturbed when the change was made. That provision is readily satisfied, however, as is the congressional purpose in changing "affected" to "may have affected" in order to avoid rendering the proposed "remedy practically worthless," by ascribing to a proved violation of § 401 the effect of establishing a prima facie case that the violation "may have affected" the outcome. This effect may of course be met by evidence which supports a finding that the violation did not affect the result. This construction is peculiarly appropriate when the violation of § 401, as here, takes the form of a substantial exclusion of candidates from the ballot.
 
 
 12
 Wirtz v. Hotel, Motel and Club Employees Union, Local 6, supra at 505-507, 88 S.Ct. at 1752 (footnotes omitted, emphasis added).
 
 
 13
 We think the language and the intention of the Supreme Court is clear. A proved violation of § 401 will have the effect of establishing a prima facie case that the violation may have affected the outcome. If there is only a single violation and a minimal one at that, it may be more easily rebutted, but it must be met by evidence which supports a finding that the violation did not affect the result. In our view, the final quoted sentence was not intended to suggest that the prima facie rule was to be applied only when the § 401 violation takes the form of a substantial exclusion of candidates from the ballot. No court has construed it in this fashion. Indeed, we are aware of no decision subsequent to Local 6 that has failed to give prima facie effect to a proved violation.
 
 
 14
 Next, we consider whether the evidence received by the trial court was sufficient to overcome the prima facie case. The District Court, relying on Wirtz v. Local Union 169, International Hod Carriers, 246 F.Supp. 741 (D.Nev.1965), held that if a violation affects the outcome of one office, it voids the entire election for all offices. We reject this view as inconsistent with the language and history of the Act. In some cases, it would operate to deprive a candidate who did not benefit from the violation of an office he deserved. The District Court's holding is contrary to the Labor Department's practice of challenging only those offices which may have been affected by the proved violation. This practice is entitled to some weight. See Usery v. Teamsters Local 639, 543 F.2d 369 (D.C.Cir.1976).
 
 
 15
 In some situations, the nature of the violation is such that the outcome of every office is affected.[4] But this is not such a case. Here, the delegates were given a clear opportunity to vote for each office separately. The nominating and election procedure went as follows: The presiding officer opened nominations for a particular office. Nominations were then made and seconded for that office. If only one person was nominated, the chair would accept a motion that the nominee be elected by acclamation. If that motion passed by a majority vote, the candidate was elected. If more than one person was nominated, the winner was determined by secret ballot. This procedure was repeated for each office.
 
 
 16
 Considering each of the offices individually, we are unable to find any reason for setting aside the election of Thomas Kemme as Fourth Vice President. Both Kemme and Richard J. Bacher were nominated for that position. Bacher was one of those recommended by the retiring president. Notwithstanding that recommendation, Kemme won the election by a vote of one hundred and four to ninety-two. The Secretary of Labor did not challenge Kemme's election because, in his view, the election was not affected by the violation. The District Court, as we indicated above, set the election aside on the theory that a violation which affects the election for one office voids the entire election. We agree with the Secretary of Labor and reverse the trial court. It would be totally inconsistent with the language and history of the Act to deprive Kemme of an office which he won on his own.
 
 
 17
 The election of Melvin T. Chadderton as Executive Secretary-Treasurer, on the other hand, must be set aside. Two persons were nominated for that office: Chadderton and Margaret Neely. Chadderton was one of those supported by the retiring president in his annual report. He won the election by a vote of one hundred and twenty-seven to seventy-four. The Secretary of Labor and the District Court both determined that the Union had not introduced evidence sufficient to demonstrate that the retiring president's recommendation did not affect the results of that election. In our judgment, the decision of the District Court was not a clearly erroneous one. The Union offered no evidence to rebut the prima facie case established by the violation.
 
 
 18
 Five persons were elected without opposition: George E. Pierson, President; Al Mendoza, Executive Vice President; Henry E. Blair, First Vice President; George E. Sodam, Second Vice President; and E. Ray Sullivan, Third Vice President. The retiring president recommended each in his final report. The Secretary of Labor determined that the report of the retiring president "may well have had and probably did have a chilling effect on other aspirants to office and their supporters." The District Court accepted this finding and added:
 
 
 19
 The possibility exists, therefore, that at least some delegates were discouraged through fear, futility or some other force from nominating one or all of their own personal choices for office.
 
 
 20
 Dunlop v. Stove, Furnace & Allied Appl. Wkrs., etc., 411 F.Supp. 801 (E.D.Mo.1976).
 
 
 21
 The Union presented no evidence to the Secretary of Labor or to the trial court which would support its view that the violation did not affect the outcome of these elections. Instead, the Union adopted the position that no violations had occurred.
 
 
 22
 While the question is not free from doubt, we hold that the District Court's decision was not a clearly erroneous one. Little evidence of actual fear or discouragement was presented to the District Court. In fact, a strong minority did oppose measures advanced by the retiring president and did nominate opposition candidates for at least three offices. On the other hand, it is not unreasonable to assume that no opposition candidates were offered for the five offices in question because Union members felt that it would be futile to do so. Absent any further evidence on this issue, we affirm the judgment of the District Court.
 
 
 23
 There is an additional election which we must consider. After being defeated for Fourth Vice President, Richard J. Bacher's name was placed in nomination, along with that of David J. Barks, for Fifth Vice President. Both men had been recommended by the retiring president for election as Union vice presidents. Bacher was elected by a vote of one hundred and two to seventy-four. It could be argued from these facts that the violation did not affect the outcome of the election as both candidates were recommended by the retiring president. The Secretary of Labor and the District Court, however, analogized this race to those in which the recommended candidate had no opposition. The Union offered no evidence on the matter. Under these circumstances, we must affirm the judgment of the District Court.
 
 
 24
 The judgment of the District Court is affirmed, except as it relates to Thomas Kemme. It is reversed as to him, and the District Court is directed to modify its judgment accordingly.
 
 
 25
 Costs will be taxed to the appellant.
 
 
 
 [1]
 Section 401(g) of the LMRDA, 29 U.S.C. § 481(g), provides:
 No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.
 
 
 [2]
 $768.00 of Union funds were used to publish the report
 
 
 [3]
 Section 402(c) of the LMRDA, 29 U.S.C. § 482(c), provides:
 If, upon a preponderance of the evidence after a trial upon the merits, the court finds
 (1) that an election has not been held within the time prescribed by section 481 of this title, or
 (2) that the violation of section 481 of this title may have affected the outcome of an election,
 the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization. The Secretary shall promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization. If the proceeding is for the removal of officers pursuant to subsection (h) of section 481 of this title, the Secretary shall certify the results of the vote and the court shall enter a decree declaring whether such persons have been removed as officers of the labor organization.
 
 
 [4]
 See Wirtz v. Hotel, Motel and Club Employees Union, Local 6, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968) (ninety-three percent of the employees were made ineligible to run for union office); Schultz v. Independent Employees Union, 74 L.R.R.M. 2137 (1970) (union failed to mail an election notice to each member of the union at least fifteen days before the election); Brennan v. Teamsters Local 639, 161 U.S.App.D.C. 173, 494 F.2d 1092 (D.C.Cir.1974) (fifty-eight percent of the union membership did not receive notice of the election); Wirtz v. Glass Bottle Blowers, 405 F.2d 176 (3rd Cir. 1968) (all but ten of the several hundred union members were ineligible to vote)