Ray MARSHALL, Secretary of Labor,
Plaintiff-Appellee,

v.

LOCAL UNION 20, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF COMMERCE, Defendant-Appellant.

No. 79–3207.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 3, 1979.

Decided Dec. 19, 1979.

Jeffrey I. Julius, Gallon, Kalniz & Iorio Co., Ted Iorio, J. E. Gallon, Toledo, Ohio, Daniel B. Edelman, Yablonski, Both & Edelman, Washington, D. C., for defendant-appellant.

E. Kathleen Shahan, Beate Bloch, U. S. Dept. of Labor, Washington, D. C., Bruce C. Heslop, U. S. Dept. of Labor, Cleveland, Ohio, Patrick J. Foley, Asst. U. S. Atty., Toledo, Ohio, for plaintiff-appellee.

Gallon, Kalniz & Iorio Co., LPA, Treasurer of U. S. Acc't Fees Earned, Samuel G. Bolotin, Toledo, Ohio, for Omar L. Brown and Harry Starkey.

Before WEICK and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

HARRY PHILLIPS, Senior Circuit Judge.

The Secretary of Labor brought this action pursuant to Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA or the Act), 29 U.S.C. §§ 401 et seq., to set aside the December 1977 election of Harold Leu as president of the International Brotherhood of Teamsters, Local 20, and to conduct a new election. The Secretary contends that candidate Leu received employer campaign contributions barred by LMRDA § 401(g), 29 U.S.C. § 481(g). The district court, finding that certain campaign contributions violated the Act and affected the outcome, declared the election void and ordered that a new election be held under the supervision of the Secretary. We affirm.

## I

Local 20 has approximately 12,000 members employed by about 500 employers in 13 counties of northwestern Ohio. There were only two candidates for president of the local on the December 1977 ballot: Harold Leu and Omar Brown. Only 3,513 members voted. The small vote possibly was due to inclement weather. Leu won by a margin of 29 votes.

This was the third contest between Leu and Brown. Leu won the first, but his victory was set aside by the International. Brown won the second election. Leu conducted a vigorous campaign for the 1977 election. He had no personal income at the time. His campaign committee obtained loans and gifts of money and property which Leu used to defray his living and campaign expenses. All the donors were employers and owners of non-union businesses engaged in interstate commerce within the area of Local 20's jurisdiction.

After Leu won the election, Brown and Starkey (a re-elected Local 20 trustee later discharged by Leu) filed protests with the secretary-treasurer of the Teamsters Joint Council and the International conducted a hearing. After waiting three months without a final answer, Brown and Starkey filed a complaint with the Secretary of Labor.

The Department of Labor investigated the election and discovered the aforementioned campaign contributions, which the Secretary concluded violated the Act and affected the outcome of the election. Because Local 20 failed to conduct a new election, the Secretary instituted this suit, pursuant to LMRDA § 402(b), 29 U.S.C. § 482(b), seeking to have Leu's election declared null and void and a new election ordered. Brown and Starkey were granted leave to intervene.

District Judge Don J. Young found that the contributions violated § 401(g) of the Act, 29 U.S.C. § 481(g). Accordingly, he voided the election for the office of president of Local 20 and ordered a new election to be conducted under the supervision of the Secretary.

Local 20 filed a notice of appeal, together with a motion for an expedited hearing. Although the appeal was expedited by this court, the re-run election already had occurred at the time of oral argument. Leu again was the winner. Leu is not a party to this suit.

## II

■ The initial question is whether the re-run election conducted under the Secretary's supervision has mooted this appeal by satisfying the order of the district court. We hold that this appeal is not moot because the question presented is "capable of repetition, yet evading review." *Moore v. Ogilvie*, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969); *Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911).

■ *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975), citing *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), identified two elements necessary to preclude a finding of mootness in the absence of a class action:

(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and

(2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.

■ It is clear that *Weinstein's* first criterion is satisfied in the present case. The district court's order was entered on March 30, 1979. The re-run election was held and the ballots counted and tabulated by June 12, 1979. Further, LMRDA § 402(d), 29 U.S.C. § 482(d) dictates that "an order directing an election shall not be stayed pending an appeal." *See Marshall v. Local Union 1374, International Assoc. of Machinists*, 558 F.2d 1354 (9th Cir. 1977); *Brennan v. International Union of Dist. 50, Allied and Technical Workers*, 163 U.S.App.D.C. 46, 499 F.2d 1051 (D.C.Cir.1974). It is unlikely under these circumstances that this court could hear and decide an appeal before any re-run election.

Element (2) of the *Weinstein* test turns on the meaning of the phrase "complaining party." In the case at bar there are three complaining parties: (1) Brown and Starkey were the complaining parties without whom this suit might never have been filed; (2) the plaintiff Secretary is the complaining party pursuant to LMRDA § 402(b), 29 U.S.C. § 482(b); and (3) Local 20 is the complaining party on appeal. To hold that Brown and Starkey are the complaining parties contemplated by the *Weinstein* test would leave satisfaction of the test to the circumstance of their intervention. To hold that the Secretary is the complaining party contemplated by *Weinstein* would preclude satisfaction of element (2) because the Secretary is not being subjected to any action but rather is plaintiff solely because of the provisions of the Act.

■ We are left with only two alternatives which would allow review of the issues: (1) that appellant is a complaining party; or (2) that *Weinstein* only applies where the plaintiff was the losing party in the district court. If the Secretary as complaining party had lost in the district court, the mootness issue would not have arisen. We conclude that the term "complaining party" as used in *Weinstein's* element (2) refers to the appellant in this court. Based on this construction we hold that there is a "reasonable expectation" that there will be a recurrence of this issue, since Local 20 might well be subject to another court-ordered re-election which would escape judicial review if this case were held to be moot. Accordingly, we proceed to decide this appeal on its merits.

### III

We are concerned that Harold Leu was not made a party to this action. Unquestionably, the district court's decision favorable to the Secretary had an adverse effect on Leu's December 1977 victory and he arguably was a "necessary party" to the suit.

Federal Rule of Civil Procedure 19 governs the joinder of persons necessary for adjudication. A person described by Rule 19(a)[1] is "necessary" when his absence prevents complete relief to existing parties or impairs his ability to protect a claimed interest in the action. Rule 19(a) directs that such a person "shall be joined as a party."

■ We conclude that Leu is not a necessary party within the meaning of the rule. It is noted that LMRDA § 402(b), 29 U.S.C. § 482(b),[2] mandates that the Secretary, upon finding probable cause to believe that a violation of the Act has occurred, shall bring a civil action against "the labor or-

---

1. **(a) Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

2. 29 U.S.C. § 482(b) directs:

   (b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe. The court shall have power to take such action as it deems proper to preserve the assets of the labor organization.

ganization as an entity." There is no mention of union officials or alleged wrongdoers.

Further, to qualify as a necessary party under Rule 19(a)(2)(i) (the only section applicable under the facts of the present case), Leu would have to be so "situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect" his interests. However, defendant Local 20 has litigated the only substantive issue that could protect the validity of Leu's December election. Local 20's position is that Congress did not intend 29 U.S.C. § 481(g) to bar the union campaign contributions under scrutiny in this action. We find that the interests of Local 20 and Leu, its then elected president, were so interwoven that the disposition of this action in his absence did not, as a practical matter, impede Leu's ability to protect his interests.

## IV

The principal issues on this appeal are whether 29 U.S.C. § 481(g) [3] is unconstitutionally overbroad and whether the phrase "no moneys of an employer" should be construed to prohibit loans or contributions to union election campaigns out of the funds of individuals or businesses not directly affected by the election but who are also employers. [4]

Local 20 argues that the limited construction urged by it is mandated by the statute's underlying rationale, its implication of rights protected by the First Amendment and basic principles of statutory construction.

We look first to the Act's underlying rationale. In 29 U.S.C. § 401, Congress has declared that it is the Government's responsibility to protect employees' rights and:

that in order to accomplish the objective of a free flow of commerce it is essential that labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations.

In *United Auto Workers v. National Right to Work Foundation*, 192 U.S.App. D.C. 23, 32–33, 590 F.2d 1139, 1148–49 (D.C. Cir.1978), the court held that 29 U.S.C. § 411(a)(4)'s prohibition of participation by "interested" employers in a union member's action against his union does not apply to litigation by an independent legal aid organization. The court enunciated the underlying rationale of the Act as follows:

The LMRDA was enacted in 1959 to remedy labor and management practices that harmed employees. Some union leaders had abused their positions of increasing power and had forsaken their responsibilities to the union's members. Some members of management had interfered with the exercise of employees' rights to organize. In addition, Congress was concerned that cooperation between some employers and some officials in the labor movement operated to hurt employees. *See* H.R.Rep.No.741, 86th Cong., 1st Sess. 6–7 (1959); S.Rep.No.187, 86th Cong., 1st Sess. 5–6 (1959), U.S.Code Cong. & Admin.News 1959, p. 2318. Because of these and other "instances of breach of trust, corruption, [and] disregard of the rights of individual employ-

---

**3.** 29 U.S.C. § 481(g) reads in its entirety:

**Use of dues, assessments or similar levies, and funds of employer for promotion of candidacy of person**

(g) No moneys received by any labor organization by way of dues assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other ex-

penses necessary for the holding of an election.

**4.** The interpretive regulations, 29 C.F.R. § 452.-78(b) provide:

(b) The prohibition against the use of employer money to support the candidacy of a person in any election subject to the provisions of Title IV is not restricted to employers who employ members of the labor organization in which the election is being conducted, or who have any business or contractual relationship with the labor organization.

ees," Congress found the enactment of the LMRDA "necessary [for the] protection of the rights and interests of employees." LMRDA § 2(b), 29 U.S.C. § 401(b) (1976).

192 U.S.App.D.C. at 32–33, 590 F.2d at 1148–49.

In *Wirtz v. Bottle Blowers Association*, 389 U.S. 463, 469–70, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968), the Supreme Court granted certiorari to determine whether a subsequent unsupervised union re-election mooted an action by the Secretary of Labor seeking to invalidate a prior election that allegedly violated 29 U.S.C. § 482(e). The Court discussed the underlying rationale of the Act and, in particular, Title IV relating to elections as follows:

The LMRDA has seven subdivisions dealing with various facets both of internal union affairs and of labor-management relations. The enactment of the statute was preceded by extensive congressional inquiries upon which Congress based the findings, purposes, and policy expressed in § 2 of the Act, 29 U.S.C. § 401. Of special significance in this case are the findings that "in the public interest" remedial legislation was necessary to further the objective "that labor organizations . . . and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations . . .," 29 U.S.C. § 401(a), this because Congress found, "from recent investigations in the labor and management fields, that there have been a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct . . ." requiring "supplementary legislation that will afford necessary protection of the rights and interests of employees and the public generally as they relate to the activities of labor organizations . . . and their officers and representatives." 29 U.S.C. § 401(b).

Title IV's special function in furthering the overall goals of the LMRDA is to insure "free and democratic" elections. (Footnotes omitted.) 489 U.S. at 469–70, 88 S.Ct. at 647.

■ The purpose of Title IV of the Act is to prevent the subjugation of the employees' representative's interests to those of management. Even the most subtle of influences can produce serious consequences for the loyalty and integrity with which the union should represent its membership. We must construe the language of 29 U.S.C. § 481(g) to comport with its underlying purpose "to prevent, discourage, and make unprofitable, improper conduct on the part of union officials, employers, and their representatives." S.Rep.No.187, 86th Cong., 1st Sess., *reprinted in* (1959) U.S.Code Cong. & Admin.News, pp. 2318, 2321.

■ The language of 29 U.S.C. § 481(g) is clear: "no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this title." We find no indication that Congress intended to limit the scope of this section by confining the term "employer" to those involved in a collective bargaining relationship with the union or to exempt the employer's use of personal funds.

Section 481(g), the Act's parallel portion prohibiting the use of moneys of a labor organization, has been subject to litigation in which a limiting construction similar to that advocated by Local 20 in the present case was rejected. In *Shultz v. Local 6799, Steelworkers*, 426 F.2d 969 (9th Cir. 1970), *aff'd on other grounds sub nom., Hodgson v. Local 6799, Steelworkers*, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971), the union had donated materials, secretarial help and similar assistance to its incumbent president to aid his re-election bid (a total cash equivalent of $13.04). The Secretary of Labor sought to have the election set aside and a new election held because of the statutory violation. The district court ordered a new election. In affirming, the court of appeals held that the violation of the Act was not mitigated by the minimal amount of the expenses. The *Shultz* court refused to dis-

regard the unambiguous language of the statute, stating:

> The legislative history of the Act does not indicate that Congress intended to place a limit on the amount that a union might lawfully spend to aid a candidate for office or that it meant to encourage troublesome factual disputes over how much (or little) money constitutes a "de minimis" amount; and the language of the provision itself is clear and unambiguous. It provides in terms that "no moneys" of a union shall be spent to promote the candidacy of any person for union office.

426 F.2d at 972.

*See generally, Usery v. Stone, Furnace & Allied Appliance Workers International Union,* 547 F.2d 1043 (8th Cir. 1977); *Brennan v. Sindicato Empleados de Equipo Pesado,* 370 F.Supp. 872 (D.Puerto Rico 1974).

█ The *Shultz* rationale applies with equal measure to the issue under discussion. The courts should be hesitant to adopt a construction of the clear language of a statute contrary to its ordinary meaning, in the absence of some indication that Congress intended a limited construction. The underlying rationale of the Act and specifically Title IV reflect the intent of Congress to bar all employer contributions just as it intended to bar all union moneys from assisting candidates for election to union offices.

█ Further, Local 20's reliance on *United Auto Workers, supra,* 590 F.2d 1139, is ill-placed. That case strengthens the Secretary's position that § 481(g) was intended

to encompass the facts at bar. The careful consideration given to the precise wording of § 101(a)(4) of the Act, 29 U.S.C. § 411(a)(4), discussed in *United Auto Workers,* in its use of the term "interested employer" shows that Congress deliberately decided not to distinguish between interested and disinterested employers in 29 U.S.C. § 481(g).[5]

We hold that the term "employer" as used in 29 U.S.C. § 481(g) refers to any employer as defined in 29 U.S.C. § 402(e).[6] This conclusion is in harmony with the underlying rationale of the Act.

## V

Local 20 next contends that 29 U.S.C. § 481(g) is unconstitutional as written because it violates rights protected by the First Amendment. We disagree.

In *Hodgson v. Liquor Salesmen's Union, Local 2,* 334 F.Supp. 1369 (S.D.N.Y.), *aff'd,* 444 F.2d 1344 (2d Cir. 1971), the court discussed the constitutionality of § 481(g) in light of a First Amendment challenge. Section 481(g) bars the contribution or application of moneys received by labor organizations and moneys of an employer to promote the candidacy of any person in a union election. There, the Secretary of Labor brought suit to set aside a union election because of alleged § 481(g) violations. The Secretary contended that certain issues of the union's publication, the *Journal,* contained statements designed to promote the candidacy of the incumbents and that moneys of an employer were applied to promote certain candidacies. The court found that

---

5. *See also* § 202(a) of the Act which requires a union officer to report certain transactions with "an employer whose employees such labor organization represents or is actively seeking to represent." *Compare* § 202(a)(4) of the Act whose language refers to "a business any part of which consists of . . . dealing with such labor organization" *with* § 202(a)(6) which speaks in terms of "any employer."

6. 29 U.S.C. § 402(e) reads:

(e) "Employer" means any employer or any group or association of employers engaged in an industry affecting commerce (1) which is, with respect to employees engaged

in an industry affecting commerce, an employer within the meaning of any law of the United States relating to the employment of any employees or (2) which may deal with any labor organization concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, and includes any person acting directly or indirectly as an employer or as an agent of an employer in relation to an employee but does not include the United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof.

the Secretary had not proved the allegation that moneys of an employer had been contributed to promote certain candidates but overturned the election because of the *Journal* articles. *See generally, Usery v. Allied Appliance, supra; Usery v. International Organization of Masters, Mates & Pilots,* 538 F.2d 946 (2d Cir. 1976); *Brennan v. Sindicato Empleados, supra.* The discussion of the district court in *Hodgson* on the constitutionality of the first portion of § 481(g) bears on the issue. Citing *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) and *Adderley v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), the court held that the statutory prohibition against using union funds to promote individual candidates does not infringe upon First Amendment freedoms.

As the *Hodgson* court recognized, this statute, although involving speech activity, is directed solely at campaign contributions, a non-speech activity. In *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968), the Court said:

> [A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

■ 29 U.S.C. § 481(g) was passed pursuant to the power of Congress to regulate interstate commerce. 29 U.S.C. § 401(a); *Hodgson, supra,* 334 F.Supp. at 1380. The substantial Government interests furthered by the Act have been discussed above. Those interests are unrelated to the suppression of free speech. The district court in *Hodgson* recognized:

> Congress in enacting § 481(g) did not dispute the right of union members, including union officials, to exercise First Amendment rights. As a matter of fact, Congress, at the same time, sought not only to protect but to expand the First

Amendment rights of union members. 29 U.S.C. §§ 401, 411. *Id.* at 1380.

Further:

> The incidental restriction on speech here is no greater than is essential to the furtherance of the governmental interests . . . The only thing which is proscribed is the use of union or employer funds to promote the candidacy of any person in an election subject to the provisions of Title IV of the LMRDA. Employers were included because, as the hearings before the Congress disclosed, "They (some employers) have cooperated with and even aided crooks and racketeers in the labor movement at the expense of their own employees . . ." Senate Report No. 187 on S. 1555 (86 Cong. 1st Sess. 1959) U.S.Cong. & Admin. News, p. 2322. *Id.*

■ We conclude that the statute is not unconstitutional on its face or as applied to the facts of this case. *Cf. Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (recognizing the power of Congress to impose fund raising restraints in the political arena).

## VI

We have considered Local 20's claims: (1) that the district court erred in finding that plaintiff carried his burden of demonstrating that Peatee and Mitchell directly contributed moneys to promote Leu's campaign; (2) that the Secretary's allegations regarding Burton Kalniz were improper and should have been dismissed; and (3) that the district court erred in excluding certain expert testimony. We find these claims and all other claims asserted by Local 20 on this appeal to be without merit.

Affirmed. No costs are taxed. Each party will bear his own costs on this appeal.

WEICK, Circuit Judge, dissenting.

I respectfully dissent. The District Court set aside the December 1977 election in which Harold Leu was elected president of the International Brotherhood of Teamsters, Local 20, and ordered a new election

**654**

to be conducted under the supervision of the Secretary. The District Court held the election was void, finding that Leu received certain campaign contributions barred by LMRDA § 401(g). 29 U.S.C. § 481(g).

The trouble is that in the suit filed by the Secretary to set aside the election, he did not make Harold Leu, the winner of the election, a party in the lawsuit. In my opinion, this violated Leu's right to due process of law guaranteed to him by the Fifth Amendment to the Constitution of the United States. Leu was not bound by the judgment of the District Court in an action which he was not made a party defendant.