848 F.2d 720
 Blue Sky L. Rep. P 72,753, Fed. Sec. L. Rep. P 93,795
FLEET AEROSPACE CORPORATION, Plaintiff-Appellee,
v.
Mark HOLDERMAN, Acting Commissioner and Chief of Securities
Div. of Securities, Department of Commerce of the State of
Ohio (86-3536); Kenneth Cox (86-3536); Aeronca, Inc.; and
the State of Ohio (86-3533), Defendants-Appellants.
 Nos. 86-3533, 86-3536.
 United States Court of Appeals,
Sixth Circuit.
 Cause Argued Dec. 10, 1987.
Decided June 6, 1988.
 
 James M. Hall, Jr. (Aeronca), Sylvia B. Robbins-Penniman, John W. Zeiger, Erwin N. Griswold, argued, Jones, Day, Reavis & Pogue, Columbus, Ohio, for defendants-appellants.
 John J. Chester, Sr., argued, Chester, Hoffman & Willcox, Columbus, Ohio, for plaintiff-appellee.
 Before KENNEDY and WELLFORD, Circuit Judges, and PECK, Senior Circuit Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 The factual and procedural basis of this dispute concerning a cash tender offer by Fleet Aerospace Corporation ("Fleet"), a Canadian corporation, to acquire stock of Aeronca, Inc., an Ohio corporation, has been set out in our prior decision in this case reported at 796 F.2d 135 (6th Cir.1986).[1] We do not set out all the underlying circumstances except as may be relevant to our decision upon the remand to this court for reconsideration of the issues under the Ohio Control Share Acquisition Act, O.R.C. Sec. 1701.83.1 ("the Ohio Act"), in light of CTS Corp. v. Dynamics Corp. of America, 481 U.S. ----, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). In our prior opinion we agreed with the district court in this case that the Ohio Act was unconstitutional in certain particulars, and we affirmed the decision that enjoined its enforcement with respect to a takeover effort by Fleet, the Canadian plaintiff, of Aeronca, the Ohio corporation. Fleet had brought this action initially seeking an injunction against enforcement of Ohio Rev.Code Secs. 1701.83.1 and 1707.04.1 (the Ohio Take-Over Act).[2]
 
 
 2
 In part A of our earlier decision we considered the question of mootness in light of the acceptance by Aeronca's management of Fleet's amended and increased cash offer. Although Fleet and Aeronca had settled any difference between them concerning the enhanced tender offer, we held that the State of Ohio and its responsible officials had standing to pursue the appeal, and we also held that there was then, in June of 1986, "a justiciable controversy" before us, "since the State of Ohio has indicated that it intends to enforce the Act against Fleet unless precluded by an injunction." 796 F.2d at 138-39.MOOTNESS
 
 
 3
 Again, Fleet suggests that the case is now moot in light of subsequent developments that have occurred since the entry of the 1986 decision on the constitutionality of the Ohio Act. It is now undisputed that a merger has been effectuated between Aeronca and a Fleet subsidiary and that Fleet was able to purchase approximately 90% of Aeronca's voting stock. The merged corporation is an Ohio corporation wholly owned by Fleet, and is presently operating in Ohio. Fleet maintains that the district court order "now gathers dust as a preliminary determination with no further effect upon anyone." (Fleet's memorandum in support of its motion to dismiss the appeal, filed June 25, 1987, at 2). It argues further in favor of finding mootness and for dismissal of the appeal because "[n]either the Control Share Acquisition Act nor any other provision of law gives Ohio any remedy to pursue." Id. at 2. Fleet maintains, in sum, that Ohio has no right to "rescind a completed tender offer." Id. at 3.
 
 
 4
 The State of Ohio responds that Fleet has violated the Ohio Act in two respects and that its Act has been judicially declared to be unconstitutional under the Commerce Clause and the Supremacy Clause of the United States Constitution. To the extent that this court made such a declaration in the opinion reported at 796 F.2d 135, we do not find Ohio's argument to be persuasive. Our decision has been vacated and the case remanded. See supra note 1. The effect of the Supreme Court's direction at 107 S.Ct. 1949 is to render of no effect our prior decision. See Hill v. Western Electric Co., 672 F.2d 381, 387 (4th Cir.), cert. denied, 459 U.S. 981, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982). Our previous characterization of the force and effect of the district court order now under reconsideration is of no precedential value or res judicata effect. Id.; see also No East-West Highway Committee, Inc. v. Chandler, 767 F.2d 21, 24 (1st Cir.1985); cf. Duncan v. Peck, 752 F.2d 1135, 1139 (6th Cir.1985) (set aside judgment has no claim preclusive effect).
 
 
 5
 Ohio argues, however, that the district court decision is still in effect and that the State has not acquiesced in that court's declaration that the Ohio Act was unconstitutional. See Maine v. Taylor, 477 U.S. 131, 135, 106 S.Ct. 2440, 2446, 91 L.Ed.2d 110 (1986).[3] Ohio was permitted to intervene by the district court, which recognized "the state's strong interest in upholding the constitutionality of its statutes." See Maine v. Taylor, 477 U.S. at 137, 106 S.Ct. at 2447. Ohio argues also that it has standing because an Ohio corporation, Aeronca, has been acquired contrary to its laws and policy. Ohio asserts that the case is not moot and that it has standing on behalf of stockholders who sold their shares to a buyer who did not comply with the Ohio statute in dispute.[4]
 
 
 6
 Ohio maintains, furthermore, that it "still has a Counterclaim pending against Fleet premised upon the Ohio Act and O.R.C. Sec. 1707.042." (State defendants-appellants memorandum in opposition to motion to dismiss appeal, filed July 2, 1987, at 7). The counterclaim seeks, among other relief, rescission of Fleet's transactions in violation of the Ohio law in controversy, including the "tender offer and resultant merger and election of new Aeronca directors by Fleet." Id. at 7. See O.R.C. Sec. 1701.82(C).[5] Finally, Ohio maintains that it may also seek the remedy of quo warranto to challenge the tender offer and merger. See O.R.C. ch. 2733. Ohio argues that whether rescission of the tender offer and merger (or disgorgement of Aeronca shares) can now be accomplished "is a matter that should be left for the District Court to decide on remand." Memorandum in opposition to motion to dismiss appeal at 9. Ohio concedes the "possible application" of State v. Buckeye Finance Corp., 54 Ohio St.2d 407, 377 N.E.2d 502 (1978), but maintains that its relevance is "uncertain" and that "[t]his is another reason why issues of remedy should be addressed by the District Court upon remand." Memorandum in opposition to motion to dismiss appeal at 9 n. 8. In addition, Ohio implies that it may have a criminal remedy against Fleet,[6] and sums up its position on remedy by urging that "availability of this [or any] additional remedy is a matter better left to the District Court to initially determine." Id. at 10. In fairness, the State's suggestion of remand is made in conjunction with its motion for entry of judgment following remand to this court.
 
 
 7
 In reply to Ohio's position that we should remand this case to the district court to determine whether the State may have any effective remedy now that the tender offer has been effectuated and the merger consummated, Fleet has taken the position that the district court merely entered a preliminary injunction and that its order "has no res judicata effect," citing University of Texas v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981) (emphasis added). (Fleet's reply memorandum, filed July 9, 1987, at 3).
 
 
 8
 It seems evident to us that Fleet no longer has any interest in a declaration that Ohio's challenged law is unconstitutional now that circumstances have brought about a completed merger of its subsidiary with the resulting Ohio corporation, Aeronca. Fleet maintains that the district court judgment that it obtained has no precedential or res judicata effect. Ohio wants to vindicate its Control Share Acquisition Act, but would seem to have little real interest in pursuing a remedy to disturb the successful continuing operation of the Ohio corporation, Aeronca, which is still positively contributing to the general welfare of the State and its residents. (At least one-sixth of Aeronca shares were held, pre-merger, by Ohio residents; Fleet is operating a subsidiary in Ohio, subject to all its corporate laws and requirements.)
 
 
 9
 Mootness is determined by examining whether an actual controversy between the parties exists in light of intervening circumstances. Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); Rettig v. Kent City School District, 788 F.2d 328 (6th Cir.), cert. denied, 478 U.S. 1005, 106 S.Ct. 3297, 92 L.Ed.2d 711 (1986). In this case the tender offer has been successfully concluded from Fleet's standpoint, and about ninety per cent of Aeronca's shareholders, most of them non-residents of Ohio, decided to sell their shares voluntarily to a non-Ohio corporation. The resulting merger has taken place, with a Fleet subsidiary combining into Aeronca, the Ohio corporation, which has continued to operate and do business with headquarters in Ohio. Our opinion dealing with the constitutionality of the Ohio statute at issue has been vacated and set aside.
 
 
 10
 The parties dispute as to whether there remains a live controversy since Fleet and Aeronca have settled their differences. Ohio, as an intervening party, however, has a stake in upholding the constitutionality of its statute. "[A] State clearly has a legitimate interest in the continued enforceability of its own statutes." Maine v. Taylor, 477 U.S. at 137, 106 S.Ct. at 2447 (citing Diamond v. Charles, 476 U.S. 54, 62, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48 (1986); Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592, 601, 102 S.Ct. 3260, 3265, 73 L.Ed.2d 995 (1982)). As an intervenor, Ohio has "all the rights of a party." Id. at 136, 106 S.Ct. at 2447 (emphasis added). It may pursue this case so long as it has " 'a sufficient stake in the outcome of the controversy' to satisfy the constitutional requirement of genuine adversity." Id. (quoting Bryant v. Yellen, 447 U.S. 352, 368, 100 S.Ct. 2232, 2241, 65 L.Ed.2d 184 (1980)).
 
 
 11
 Although the decision of the district court in this case has been published, see 637 F.Supp. 742, the successful party before that court maintains that the preliminary injunction granted has no res judicata effect. The parties dispute as to whether there is still a remedy available to Ohio to "undo" the completed tender offer and merger. The district court has had no opportunity to consider its opinion, and the effect thereof, in light of CTS Corp. v. Dynamics Corp. of America. The district court has not specifically ruled upon Ohio's counterclaim, although the effect of its judgment would be to rule against Ohio's claims. (The parties might reach an agreement to stipulate to vacating the district court's judgment upon remand in view of the substantially changed circumstances that presently exist.)
 
 
 12
 We believe that the district court is the proper tribunal to rule upon these questions in light of the change in circumstances and in view of the intervening Supreme Court decision in CTS Corp. Whether Ohio has any effectual remedy with regard to rescission or setting aside the completed merger in light of the intervening rights and interests of the sellers of nearly all Aeronca's stock is an unsettled matter and may bear upon the mootness issue. The district court, on remand, should first consider the mootness question and may also reconsider its decision in light of CTS Corp.[7] We express no opinion at this juncture regarding the constitutionality of the Ohio Control Share Acquisition Act.
 
 
 13
 The district court, on remand, should consider also whether its injunction has any continuing vitality in light of the subsequent developments in this case and, therefore, whether it is necessary to maintain in effect its declaration concerning the constitutionality of the Ohio Act. The general principle in cases involving a constitutional challenge is to avoid striking a statute as unconstitutional if the viable issues in the case may be disposed of on some other reasonable basis.
 
 
 14
 We therefore REMAND this case to the district court for further consideration pursuant to the directions herein set out.
 
 
 15
 KENNEDY, Circuit Judge, dissenting.
 
 
 16
 Because I believe it is clear that Ohio has standing to contest the district court decision that the Ohio statute is unconstitutional on its face and as applied to this case, I cannot agree that the case may be mooted by the other parties' resolution of their dispute. "[A] State clearly has a legitimate interest in the continued enforceability of its own statutes." Maine v. Taylor, 477 U.S. 131, 137, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1985). Ohio has indicated it intends to enforce the act against Fleet. I would, therefore, reach the merits of the case.
 
 
 17
 The Supreme Court remanded our prior decision in this case for reconsideration in light of CTS Corp. v. Dynamics Corp. of America, --- U.S. ----, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). In CTS the Court held that Indiana's take-over statute, Ind.Code Sec. 23-1-42-1 et seq. (Supp.1986), was not preempted by the Williams Act and did not violate the Commerce Clause. The majority concluded that the Indiana statute, which restricted voting rights on shares purchased by an offeror until a shareholder meeting fifty days after the commencement of the tender offer, did not prohibit an offeror from consummating an offer on the twentieth business day, the earliest day permitted under applicable federal regulations under the Williams Act. 17 CFR 240.14e-1(a) (1986). The Court pointed out that the Indiana Act did not preclude an offeror from purchasing shares as soon as federal law permits. 107 S.Ct. at 1647. It noted "that the Act does not prohibit any entity--resident or nonresident--from offering to purchase, or from purchasing shares in Indiana corporations...." Id. at 1652. The dissenting justices argued that the practical impact of the restriction on voting rights was to effectively preclude a prospective purchaser from purchasing shares and out-of-state stockholders from selling their stock.
 
 
 18
 It seems to me that the key aspect of Indiana's statute, which kept it from running afoul of the Commerce Clause was that it did not restrict sales of stock in interstate commerce, but merely regulated rights of shareholders and their corporations. In this case, however, the Ohio statute prohibits shareholders from selling "control shares" to a tender offeror in interstate commerce. The Ohio Act thus goes beyond Indiana's legitimate attempt to regulate the right of a shareholder to participate in the administration of the affairs of a corporation; it prohibits an out-of-state shareholder from selling stock to another shareholder. It is difficult to see what interest Ohio could have in prohibiting a New York shareholder from selling his shares to a New Jersey resident. Ohio's argument that there is no practical difference between restricting voting rights and prohibiting the transfer of shares was rejected by the majority in CTS.
 
 
 19
 The Ohio Act also lacks another crucial requirement of the Indiana statute, Ohio shareholders. In distinguishing Edgar v. MITE, 457 U.S. 624, 106 S.Ct. 2629, 73 L.Ed.2d 269 (1982), the Court in CTS noted that "unlike the Illinois statute in MITE, the Indiana Act applies only to corporations that have a substantial number of shareholders in Indiana," whom Indiana undisputably has an interest in protecting. 107 S.Ct. at 1652. In contrast, the Ohio statute here does not require that any Ohio shareholder be affected for the statute to be invoked. The only requirements are incorporation in Ohio, and principal place of business, principal executive officers, or substantial assets in the state. O.R.C. Sec. 1701.01(Y).
 
 
 20
 I would hold, therefore, that the Ohio Act is preempted by the Williams Act and that it violates the Commerce Clause.
 
 
 
 [1]
 Our reported decision has been vacated and remanded in light of CTS Corp. v. Dynamics Corp. of America, 481 U.S. ----, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). Ohio v. Fleet Aerospace Corp., 481 U.S. ----, 107 S.Ct. 1949, 95 L.Ed.2d 521 (1987). This prior decision is accordingly no longer of any import, but the district court's decision is, in effect, reinstated, and we must now reconsider this appeal in view of the Supreme Court's decision in CTS Corp
 
 
 [2]
 Fleet's Sec. 1707.04.1 claim was dismissed as moot and is not now before us
 
 
 [3]
 Ohio argues, moreover, that Fleet sought to dismiss the appeal for Ohio's lack of standing in a motion addressed to the Supreme Court and that this position was rejected by that Court. The Supreme Court's order vacating our opinion and remanding the case makes no mention of this motion by Fleet, and indicates no decision with regard to standing or mootness issues
 
 
 [4]
 The language relied upon by Ohio is from O.R.C. Sec. 1701.83.2(A)(5):
 The General Assembly observes that securities law protection of state residents has long been recognized as an appropriate subject of state law regulation under the federal system. The General Assembly acknowledges an in loco parentis responsibility to shareholders who invest in corporations created under the laws of Ohio and to shareholders generally who reside in Ohio.
 We have some doubt of Ohio's "in loco parentis responsibility" or authority to protect or to attach conditions upon Fleet, a nonresident, which "invests" or desires to invest in Ohio corporations.
 
 
 [5]
 Aeronca is not named as a defendant, however, in Ohio's counterclaim
 
 
 [6]
 The district court, however, stated that
 [T]here has been no allegation that [Fleet] has committed any act in violation of the anti-fraud prohibitions codified in section 1707.042. There is nothing in the record to even suggest that the state defendants or Aeronca have any cause to invoke section 1707.042.
 
 
 [637]
 F.Supp. 742, 749 (footnote omitted). The State of Ohio in its reply brief dated July 15, 1987, suggests it may yet raise a claim under Sec. 1707.042. See State's reply brief at 3
 
 
 [7]
 A very recent decision by another federal district court dealing with a constitutional challenge to the Ohio Control Share Acquisition Act has refused to grant a corporation making a tender offer an injunction against enforcement of the Act based on its alleged unconstitutionality. That decision indicated preliminarily that the Act in question did not violate the Commerce Clause or place an undue burden on interstate commerce, and that it was not preempted by the Williams Act. Veere, Inc. v. The Firestone Tire and Rubber Co., --- F.Supp. ----, No. C88-0571A (N.D.Ohio March 16, 1988). Veere, Inc. indicated that the parties agreed that these issues were to be considered in light of CTS Corp. v. Dynamics Corp. of America, --- U.S. ----, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). Veere, Inc. was decided based on an analysis of CTS Corp