William E. BROCK, Secretary of Labor, Plaintiff–Appellant (88–1932), Plaintiff–Appellee (88–1416),

Jerry Tucker, Intervenor Plaintiff–Appellant, (88–1803/1539), Intervenor Plaintiff–Appellee, (88–1416),

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, (UAW), Defendant–Appellee, (88–1539/1803/1932), Defendant–Appellant, (88–1416).

Nos. 88–1416, 88–1539, 88–1803 & 88–1932.

United States Court of Appeals, Sixth Circuit.

Argued July 25, 1989.

Decided Nov. 3, 1989.

Helene Boetticher, U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellee in Case No. 88–1416.

Barbara Harvey, Detroit, Mich., Joseph A. Yablonski (argued), Yablonski, Both & Edelman, Washington, D.C., for plaintiff-intervenor in Case No. 88–1416.

James K. Robinson, Honigman, Miller, Schwartz & Cohn, M. Jay Whitman (argued), United Auto Workers, Detroit, Mich., for defendant-appellant in Case No. 88–1416.

Peter A. Caplan, Asst. U.S. Atty., Office of the U.S. Atty., Detroit, Mich., for plaintiff in Case No. 88–1539.

Peter A. Caplan, Asst. U.S. Atty., Detroit, Mich., Helene Boetticher, U.S. Dept. of Labor, Frederick Bowen (argued), U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for plaintiff-appellee in Case No. 88–1539.

Barbara Harvey, Detroit, Mich., Charles R. Both, Daniel B. Edelman, John F. Colwell, Joseph A. Yablonski (argued), Yablonski, Both & Edelman, Washington, D.C., for plaintiff-appellant in case No. 88–1539.

James K. Robinson, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., Helene Boetticher, U.S. Dept. of Labor, Washington, D.C., M. Jay Whitman (argued), United Auto Workers, Detroit, Mich., for defendant-appellee in case No. 88–1539.

Jeffrey A. Hennemuth (argued), Charles I. Hadden, Allen H. Feldman, U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for plaintiff in case No. 88–1803.

Barbara Harvey, Detroit, Mich., John F. Colwell, Joseph A. Yablonski (argued), Yablonski, Both & Edelman, Washington, D.C., for intervenor-appellant in Case No. 88–1803.

James K. Robinson, Honigman, Miller, Schwartz & Cohn, Barbara Harvey, M. Jay Whitman (argued), United Auto Workers, Detroit, Mich., for defendant-appellee in Case No. 88–1803.

Peter A. Caplan, Asst. U.S. Atty., Office of the U.S. Atty., Detroit, Mich., Helene Boetticher, U.S. Dept. of Labor, Frederick Bowen, Jeffrey A. Hennemuth (argued), Charles I. Hadden, Allen H. Feldman, U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for plaintiff-appellant in Case No. 88–1932.

Barbara Harvey, Detroit, Mich., John F. Colwell, Joseph A. Yablonski (argued), Yablonski, Both & Edelman, Washington, D.C., for plaintiff-intervenor in Case No. 88–1932.

M. Jay Whitman (argued), United Auto Workers, Detroit, Mich., for defendant-appellee in Case No. 88–1932.

William Mazey, Rothe, Mazey, Mazey & Hamburger, Southfield, Mich., for defendant-intervenor in Case No. 88–1932.

Before KENNEDY and KRUPANSKY, Circuit Judges; and MILES, Senior District Judge.[*]

KRUPANSKY, Circuit Judge.

Initially, the controversies joined in this consolidated series of appeals, challenging the propriety of a 1986 election for Regional Director of Region 5 of the International Union of the United Automobile, Aerospace and Agricultural Workers of America (International UAW), invite consideration and resolution of the threshold jurisdictional issue of mootness.[1]

The record developed the following underlying facts. The delegates from the local unions representing Region 5 of the UAW were scheduled to convene in convention on June 4, 1986 in Anaheim, California to, *inter alia,* elect a Director for Region 5 who would also serve as a member of the UAW's governing board, the International Executive Board (IEB). Jerry Tucker (Tucker), the Assistant Regional Director for Region 5 had announced his candidacy for the Director's position on May 8, 1986, challenging incumbent Regional Director, Kenneth Worley (Worley). By declaring his candidacy less than one month prior to the scheduled election, Tucker violated an internal UAW rule which provided that any UAW staff member desirous of challenging an incumbent elected UAW official was required to announce his candidacy at least ninety days before the election, and contemporaneously assume an unpaid leave of absence until after the election ("90 day rule").

On May 12, 1986, Tucker was discharged from his appointed position as Assistant Regional Director, ostensibly because of his failure to have complied with the "90 day rule." Although his eligibility to seek the position of Regional Director was not questioned, his termination from his official union position denied him access to the convention floor and deprived him of the opportunity to campaign in that area of concentrated delegate activity. Moreover, during the pre-election campaign period, Worley had diverted union resources to prepare and circulate a campaign letter, reproduced on union stationery, to advance his campaign.

Worley defeated Tucker by a margin of less than one vote, the final vote tabulated as 324.577 to 324.415 votes.[2] Tucker filed a letter of protest with UAW President

---

[*] The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation.

[1.] Tucker, the intervening party, has suggested that the issue of mootness has been waived because it had not been pressed in the briefs or motions filed with this court. It is clear, however, that "mootness is a threshold jurisdictional issue," *WJW–TV, Inc. v. City of Cleveland,* 878 F.2d 906, 909 (6th Cir.1989) (per curiam), *cert. denied,* ⸺ U.S. ⸺, 110 S.Ct. 74, 107 L.Ed.2d 41 (1989), which cannot be waived or conceded by the actions or omissions of the parties. *Compare Speer v. City of Oregon,* 847 F.2d 310, 311 (6th Cir.1988) ("We must first consider the threshold question of mootness in addressing this appeal, since it appears that no actual controversy still exists between the parties."); *Rettig v. Kent City School Dist.,* 788 F.2d 328, 330 (6th Cir.) ("Of initial concern to this court is the threshold issue of subject matter jurisdiction."), *cert. denied,* 478 U.S. 1005, 106 S.Ct. 3297, 92 L.Ed.2d 711 (1986).

[2.] The UAW delegates' voting practices approve fractional voting. The number of votes assigned to each of the local delegates is calculated by dividing the total number of votes which a particular local union is allocated by the number of delegates attending the convention from the local union.

Owen Bieber (Bieber), dated June 5, 1986, charging irregularities in the selection of a number of the local delegates to the Region 5 convention. The convention delegates voted on June 6, 1986 to reconvene the credentials committee to consider Tucker's complaint. The credentials committee rejected this challenge to the seating of a number of the local delegates, and Worley's reelection was duly certified.

On June 13, 1986, Tucker, by letter to William E. Brock, the Secretary of Labor (Secretary), protested the results of the Region 5 Director's election, reasserting his claim that the delegates from local unions 119, 218, 514, and 1049 had been elected in violation of the Labor–Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 481(a), (e) and (g). Subsequent to an investigation, the Secretary concluded that Tucker's assertions were probably meritorious and, accordingly, initiated an action against the UAW on September 12, 1986 in the United States District Court for the Eastern District of Michigan (Civil Action No. 86–3859), charging that the election of a number of local delegates to the June 4, 1986 convention had violated the statutory standards of the LMRDA, and requested an injunction invalidating the June 4, 1986 election, and mandating a new election for all Region 5 local delegates as well as its Director. .

Within approximately the same time period, Tucker had filed a protest with the UAW alleging that he had been terminated from his appointive position as the Assistant Regional Director of UAW Region 5 in retaliation for having challenged incumbent Director Worley in the forthcoming election. After receiving no definitive response from the UAW concerning his inquiries, Tucker filed a second complaint with the Secretary on September 19, 1986, charging that the retaliatory action of the UAW constituted a violation of the LMRDA, 29 U.S.C. § 481(e). Subsequent to an investigation, the Secretary, on November 18, 1986, commenced a second lawsuit (Civil Action No. 86–4827) against the UAW in the United States District Court for the Eastern District of Michigan, alleging that Tucker had been terminated in retaliation for having declared for elective union office as an opponent of Worley and that the UAW's "90 day rule" constituted an impermissible election restriction under the LMRDA. The Secretary petitioned the district court to invalidate the original 1986 election for the UAW Region 5's Regional Director, and to order a new election to be conducted under the supervision of the Secretary.

Additionally, on October 2, 1986, Tucker filed a third complaint with the Secretary, alleging that the UAW had violated the standards imposed upon the conduct of union election campaigns by having permitted an incumbent UAW officer, Worley, to impermissibly divert union resources to further his personal campaign for the position of Director of UAW Region 5. As a result of these charges, the Secretary initiated a third lawsuit against the UAW on December 1, 1986 in the United States District Court for the Eastern District of Michigan (Civil Action No. 86–5007), charging that the practices complained of were in violation of the LMRDA, 29 U.S.C. § 481(g), seeking to void the 1986 Regional Director's election and to mandate a new election to be conducted under the supervision of the Secretary.

Tucker also initiated an individual civil action against the UAW in the United States District Court for the Eastern District of Michigan (Civil Action No. 86–4164), alleging private causes of action for his termination by the UAW from his appointive position pursuant to Title I of the LMRDA and the UAW Constitution, as well as state law claims sounding in breach of contract and tortious interference with contractual rights. Tucker sought monetary and injunctive relief from the UAW for these charged causes of action.

On March 27, 1987, the United States District Court for the Eastern District of Michigan consolidated the four civil actions pending before it, all of which concerned the 1986 election campaign for the position of Director for UAW Region 5, and granted Tucker's motions to intervene in three of the above described civil actions com-

menced by the Secretary against the UAW.[3]

On March 30, 1988, the district court, in response to pending motions and cross-motions for summary judgment, entered a memorandum opinion and order, disposing of three of the consolidated civil actions filed by the Secretary in which Tucker was an intervening party and severed Tucker's private cause of action initiated under Title I of the LMRDA for separate resolution.[4]

In its disposition, the district court concluded that the undisputed facts demonstrated irregularities in the election procedures that had been implemented by Local 514 in electing its delegates for the 1986 Regional Director's election; that union resources had been impermissibly used to further Worley's candidacy for the Regional Directorship because a letter promoting his campaign had been typed and photocopied using union equipment, supplies and facilities; and that, in light of Worley's narrow margin of victory in the Regional Director's election (i.e., less than one vote out of a total of nearly 650 votes cast), the violations of the LMRDA had likely affected the outcome of the 1986 Regional Director's contest. The district court accordingly ordered new elections to select convention delegates from Region 5, as well as for its Director, to be conducted under the Secretary's supervision.

Subsequent to the district court's memorandum opinion and order of March 30, 1988, requiring new elections to elect local delegates and a Director of UAW Region 5, the UAW notified the Secretary that former union members who had been laid-off from GM's Truck and Bus Unit, which had been closed since August of 1987, and retired members would be ineligible to vote in the scheduled supervised reelections. On May 19, 1988, the Secretary petitioned the district court for an order mandating the UAW to permit the disenfranchised members of Local 25 to participate in the forthcoming reelection, arguing that they were "members in good standing" under the UAW's Constitution who were entitled to exercise their voting rights in the scheduled elections.

In a memorandum opinion and order issued on June 1, 1988, the district court concluded that it lacked jurisdiction to consider the Secretary's petition since available union administrative remedies had not been exhausted. Both the Secretary and Tucker moved for reconsideration, arguing that internal union administrative remedies were not required to be exhausted preliminary to challenging the UAW's action barring the participation of the laid-off and retired union members in the scheduled reelection process. Alternatively, the Secretary and Tucker argued that internal union administrative remedies had, in fact, been exhausted as of June 6, 1988. On July 13, 1988, the district court denied the motions for reconsideration. Tucker and the Secretary perfected appeals from the district court's denial on August 1, 1988 and September 9, 1988, respectively.

The court-ordered supervised elections were conducted on September 2, 1988. Tucker defeated his opponent, Worley, by 362.2 votes to 327.8 votes, a margin of 34 votes. Worley did not contest the election, and Tucker was certified as the Director of Region 5. On June 21, 1989, Tucker's term as Regional Director expired and he lost his bid for reelection to Roy Wyse (Wyse), an appointed official of the UAW, who had honored the "90 day rule" in challenging Tucker.

"Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants."

---

**3.** The district court consolidated the three civil actions commenced by the Secretary, which it had denominated *Brock I* (No. 86–3859), *Brock II* (No. 86–4827), and *Brock III* (No. 86–5007), along with Tucker's personal cause of action under Title I of the LMRDA, *Tucker v. Bieber* (No. 86–4164). *See Brock v. Intern. Union. UAW*, 682 F.Supp. 1415, 1419–20 (E.D.Mich. 1988).

**4.** Tucker perfected a timely appeal from the district court's order disposing of his private civil action, styled *Tucker v. Bieber*, No. 86–4164 (E.D.Mich. January 19, 1989), which appeal has been denominated *Tucker v. Bieber & UAW*, No. 89–1721 before this court. This appeal, however, was not consolidated for consideration before this panel.

*WJW–TV, Inc. v. City of Cleveland,* 878 F.2d 906, 909 (6th Cir.1989) (per curium) (quoting *Deakins v. Monaghan,* 484 U.S. 193, 199, 108 S.Ct. 523, 528, 98 L.Ed.2d 529 (1988)), *cert. denied,* —— U.S. ——, 110 S.Ct. 74, 107 L.Ed.2d 41 (1989); *accord Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982) ("Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'"); *Affholder v. Preston Carroll Co.,* 866 F.2d 881, 885 (6th Cir.1989) ("Article III of the Constitution confines the federal courts to adjudicating actual 'cases' or 'controversies.'") (quoting *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *County of Oakland v. City of Detroit,* 866 F.2d 839, 845 (6th Cir.1989) ("The Constitution makes it clear that the judicial power vested in federal courts under Section 1 of Article III extends only to 'Cases' and 'Controversies.'"); *Rettig v. Kent City School Dist.,* 788 F.2d 328, 330 (6th Cir.) ("Article III grants the federal courts jurisdiction over cases and controversies."), *cert. denied* 478 U.S. 1005, 106 S.Ct. 3297, 92 L.Ed.2d 711 (1986). "To satisfy the case or controversy requirement, an actual controversy must exist at all stages of review, and not simply on the date the action is initiated." *WJW–TV, Inc.,* 878 F.2d at 910 (quoting *Rettig,* 788 F.2d at 330). "If there is no case or controversy, this court lacks subject matter jurisdiction to hear this appeal even though the parties agreed below that the case was ripe for adjudication...." *WJW–TV, Inc.,* 878 F.2d at 910 (quoting *Michigan v. Meese,* 853 F.2d 395, 397 (6th Cir.), *cert. denied sub nom. Michigan v. Thornburgh,* —— U.S. ——, 109 S.Ct. 528, 102 L.Ed.2d 560 (1988)).

"Mootness is determined by examining whether an actual controversy between the parties exists in light of intervening circumstances." *WJW–TV, Inc.,* 878 F.2d at 909 (quoting *Fleet Aerospace Corp. v. Holderman,* 848 F.2d 720, 723 (6th Cir. 1988)); *accord Carras v. Williams,* 807 F.2d 1286, 1289 (6th Cir.1986) ("Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief."); *Constangy, Brooks & Smith ex rel. Teledyne Indus., Inc. v. NLRB,* 851 F.2d 839, 841 (6th Cir.1988); *Speer v. City of Oregon,* 847 F.2d 310, 311 (6th Cir.1988).

Initially, the Secretary and Tucker have suggested that the Supreme Court's decision in *Wirtz v. Local 153, Glass Bottle Blowers Ass'n,* 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968) militates against any conclusion that the issues joined in the instant appeal have become moot, despite the fact that the 1986 election for Director of UAW Region 5 had by court order been rescheduled and conducted under the Secretary's supervision, that Tucker had been elected and had completed his term of office, and that he had been subsequently defeated by a duly elected successor. In *Wirtz,* the Supreme Court examined the specific issue of "whether ... the Secretary's cause of action [commenced pursuant to Title IV of the LMRDA had become mooted] upon the fortuitous event of another unsupervised election before final judicial decision of the suit." *Wirtz,* 389 U.S. at 469, 88 S.Ct. at 647. The Court concluded that the intervention of a scheduled, *unsupervised* election did not serve to moot the Secretary's action challenging the propriety of the previously conducted election.

> We therefore hold that when the Secretary of Labor proves the existence of a 401 violation that may have affected the outcome of a challenged election, the fact that the union has already conducted another *unsupervised* election does not deprive the Secretary of his right to a court order declaring the challenged election void and directing that a new election be conducted under his supervision.

*Wirtz,* 389 U.S. at 475–76, 88 S.Ct. at 650 (emphasis added) (footnote omitted); *Wirtz v. Local Union No. 125, Laborers' Int'l Union of N. Am., AFL–CIO,* 389 U.S. 477, 479, 88 S.Ct. 639, 640, 19 L.Ed.2d 716 (1968). The result enunciated in *Wirtz,* however, is factually distinguishable from the case at bar and thus is not dispositive

of the issue of mootness presented in the instant case.

In concluding that the Secretary's action was not moot, the Court in *Wirtz* specifically and repeatedly indicated that its decision had been predicated upon the conclusion that an intervening, *unsupervised* election would not serve to moot a complaint of election irregularities in the preceding term of office.

> We cannot agree that this statutory scheme [codified in Title IV of the LMRDA] is satisfied by the happenstance of an *unsupervised* election. The notion that the unlawfulness infecting the challenged election should be considered as washed away by the following election disregards Congress' evident conclusion that only a *supervised* election could offer assurance that the officers who achieved office as beneficiaries of violations of the Act would not by some means perpetuate their unlawful control in the succeeding election.... Congress chose the alternative of a *supervised* election as the remedy for a 401 violation in the belief that the protective presence of a neutral Secretary of Labor would best prevent the unfairness of the first election from infecting, directly or indirectly, the remedial election. The choice also reflects a conclusion that union members made aware of unlawful practices could not adequately protect their own interests through an *unsupervised* election. It is clear, therefore, that the intervention of an election in which the outcome might be as much a product of unlawful circumstances as the challenged election cannot bring the Secretary's action to a halt.

*Wirtz,* 389 U.S. at 474–75, 88 S.Ct at 649–50 (emphasis added). In contrast to the circumstances presented to the Court in *Wirtz,* in the instant case the Secretary had in fact obtained an order from the district court which "declar[ed] the challenged election void and [ordered] ... a new election ... conducted under his supervision." *Wirtz,* 389 U.S. at 475–76, 88 S.Ct. at 650. Moreover, in *Wirtz,* it was the Secretary who was the party perfecting the appeal.

A situation more closely analogous to the facts of this appeal was presented in *Marshall v. Local Union 20, Int'l Bhd. of Teamsters,* 611 F.2d 645 (6th Cir.1979), which addresses an intervening election that had been *supervised* by the Secretary. In *Marshall,* this court defined the issue on appeal as "whether the re-run election conducted under the Secretary's supervision has mooted this appeal." *Marshall,* 611 F.2d at 648. In resolving the issue of mootness, this circuit concluded that the Supreme Court's decision in *Wirtz* did not automatically compel the conclusion that an appeal was moot, but rather mandated an examination of the facts to determine if they placed the appeal within the narrow and limited exception to the mootness doctrine which provides that an "appeal is not moot because the question presented is 'capable of repetition, yet evading review.'" *Marshall,* 611 F.2d at 648 (quoting *Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969)); *compare Speer,* 847 F.2d at 311 ("A case will not be found moot if it raises issues that are 'capable of repetition, yet evading review.'"); *see also DeFunis v. Odegaard,* 416 U.S. 312, 318–19, 94 S.Ct. 1704, 1706–07, 40 L.Ed.2d 164 (1974) (per curiam)); *Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *Kaczala v. Lucas County Bd. of Elections,* 848 F.2d 85, 86 (6th Cir.1988).

The Secretary and Tucker alternatively have urged this court to conclude that the issues joined in this appeal are within the ambit of the "capable of repetition, yet evading review" exception to the accepted criteria for determining mootness.

> This doctrine applies in exceptional situations in which two conditions exist: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."

*Speer,* 847 F.2d at 311 (quoting *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975)); *Marshall v. Local Union 20, Int'l Bhd. of Teamsters,* 611 F.2d at 648. In applying the

standard to an action commenced under the LMRDA in *Marshall,* this circuit observed that to determine if "there was a reasonable expectation that the same complaining party would be subjected to the same action again," it was incumbent upon the party who has perfected the appeal as to a particular issue to demonstrate that the challenged action is "capable of repetition, yet evading review." *Marshall,* 611 F.2d at 649 ("We conclude that the term 'complaining party' as used in *Weinstein's* element (2) refers to the appellant in this court."); *compare Speer,* 847 F.2d at 311. In the case at bar, three separate appeals were timely perfected and, in accord with this court's pronouncement's in *Marshall,* each appeal should be analyzed individually to determine if there is a reasonable expectation that the appealing party may again be subjected to the particular action challenged upon appellate review.

■ In Appeal No. 88–1416, the UAW has challenged that part of the district court's order that mandated a new election for local delegates from Region 5 and for the office of Director. The district court had concluded that the election of a Director for UAW Region 5 was a two step procedure necessitating new elections, in the first instance, of the local delegates who, after certification, would duly elect a Director. The UAW, while conceding the propriety of a new election to determine the Regional Director, charged that the district court abused its discretion in ordering new elections of an entire new slate of local delegates.

Pursuant to the district court's order on September 2, 1988, a new election was conducted under the supervision of the Secretary to elect local delegates for Region 5. On the same date, these delegates duly elected Tucker as the Director of Region 5 by a total of 362.2 votes, to 327.8 votes for the incumbent, Worley. As a result, Tucker was elected to the remaining term of the

Regional Director, which was to expire in June, 1989, at which point Wyse defeated him in his bid for reelection to the position.

As the UAW, the appealing party in No. 88–1416, has noted, the district court's order in the case at bar represented the first instance in approximately fifty years where new elections were ordered for both local delegates and Regional Director. The Supreme Court has instructed that "for the purposes of assessing the likelihood" that a complaining party will again be subjected to a particular action, the courts "generally have been unwilling to assume that the party seeking relief will repeat the type of [activity which was the focus of the judicial complaint and] that would once again place him or her at risk of that injury." *Honig v. Doe,* 484 U.S. 305, 320, 108 S.Ct. 592, 602, 98 L.Ed.2d 686 (1988); *accord Los Angeles v. Lyons,* 461 U.S. 95, 105–06, 103 S.Ct. 1660, 1666–67, 75 L.Ed.2d 675 (1983); *Murphy v. Hunt,* 455 U.S. 478, 484, 102 S.Ct. 1181, 1184, 71 L.Ed.2d 353 (1982); *O'Shea v. Littleton,* 414 U.S. 488, 497, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974); *see also Heimberger v. School Dist. of Saginaw,* 881 F.2d 242, 246 n. 8 (6th Cir.1989); *Newsome v. Batavia Local School Dist.,* 842 F.2d 920, 922–23 (6th Cir.1988). The appellants have thus failed to prove any "reasonable expectation" that the UAW will repeat the conduct here at issue or that they will again be confronted by similar court action.

■ In Cross–Appeal No. 88–1539, Tucker has challenged the district court's dismissal of the complaint charging that the UAW's "90 day rule" was an i‌ permissible restriction upon his candidacy for UAW elective office.[5] The district court concluded that the Secretary's and Tucker's challenge to the 90 day rule was mooted by the full relief the court had accorded them on alternative grounds by mandating new elections conducted under the supervision

---

5. The "90 day" rule, which is the focus of Tucker's challenge in this cross-appeal, provides as follows:

> A staff member who decides to run against an officer or regional director must make his intentions known and request a leave of absence at least ninety days prior to the convention. Such staff member will be given a leave of absence and be subject to reassignment in the event he is an unsuccessful candidate. *Tucker,* 682 F.Supp. at 1426 ("90 day rule" of September 27, 1983). ˋ

of the Secretary. "If a party has already obtained all the relief sought on appeal, the case is moot and must be dismissed." *Lowary v. Lexington Local Bd. of Educ.*, 854 F.2d 131, 133 (6th Cir.1988); *accord WJW–TV, Inc.*, 878 F.2d at 910–11 (The grant of relief to a party on an alternative state law theory mooted claim relating to federal constitutional challenge.); *Campbell v. City of Allen Park*, 829 F.2d 576, 580 (6th Cir.1987) (The fact that the controversy had been resolved, and relief accorded, under alternative state law theory had mooted parallel claims sounding in federal law.); *Detroit Fire Fighters Ass'n. Local No. 344, I.A.F.F. v. Dixon*, 572 F.2d 557, 559 (6th Cir.1978) (per curiam) (same).

Furthermore, Tucker, the intervening party and cross-appellant, has failed to demonstrate that there was a reasonable expectation that, as the appealing party joining this issue, he would again be subjected to the particular action challenged in the instant appellate review.[6] By its terms, the "90 day rule" applies only to *appointive* positions of the UAW. Although Tucker had originally held an appointive office at the time he announced his candidacy for the position of Director of UAW Region 5, in May of 1986, he no longer had claim to such a position after his election to the Director's position on September 2, 1988, and, consequently, he was not, thereafter, subject to the limitations expressed in the "90 day rule."

[M]ootness has two aspects: "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969).

.... [T]he second aspect of mootness, that is, the parties' interest in the litigation ... has [been] referred to ... as the "personal stake" requirement. *E.g., Franks v. Bowman Transp. Co.*, 424 U.S. 747, 755, 96 S.Ct. 1251, 1259, 47 L.Ed.2d 444 (1976); *Baker v. Carr*, 369

U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

The personal-stake requirement relates to the first purpose of the case-or-controversy doctrine—limiting judicial power to disputes capable of judicial resolution....

The "personal stake" aspect of mootness doctrine also serves primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving. One commentator had defined mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973). *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396–97, 100 S.Ct. 1202, 1208–09, 63 L.Ed.2d 479 (1980).

Furthermore, any conjecture by Tucker that he would, in the future, again be appointed to a position as a UAW staff member, and could thereafter seek elective office in the UAW, is simply too speculative to rise to the level of proving that "there is a reasonable likelihood that [Tucker] will again" be affected by the "90 day rule." *Honig*, 484 U.S. at 318, 108 S.Ct. at 601; *compare Honig*, 484 U.S. at 318 n. 6, 108 S.Ct. at 601 n. 6 ("[T]here must be a 'reasonable expectation' *or* a 'demonstrated probability' that the same controversy will recur.") (quoting *Murphy*, 455 U.S. at 482, 102 S.Ct. at 1183–84) (emphasis in original).

It is well established that " 'such speculative contingencies afford no basis for our passing on the substantive issues' ... in the absence of 'evidence that this is a prospect of "immediacy and reality." ' " *DeFunis v. Odegaard*, 416 U.S. 312, 320 n. 5, 94 S.Ct. 1704, 1707 n. 5, 40 L.Ed.2d 164 (1974) [ (per curiam) ] (citations omitted). "The threat [alleged in the case at bar by Tucker], based on the mere 'speculative contingenc[y],' ... can-

---

**6.** Tucker has suggested that the "capable of repetition, yet evading review" standard did not apply to union elections. This court, however, has specifically applied that standard to union

LMRDA election challenges, *see, e.g., Marshall*, 611 F.2d at 648–49 and to political electoral challenges, *see, e.g., Speer*, 847 F.2d at 311.

not be said to be 'sufficiently real and immediate to show an existing controversy.'" *Deakins*, 484 U.S. at 200 n. 4, 108 S.Ct. at 529 n. 4 (citations omitted). "What action [Tucker] ... will take in the future ... is simply a matter of conjecture at this time. Courts do not rule on hypothetical cases." *Detroit Fire Fighters Ass'n. Local No. 344*, 572 F.2d at 559; *see also Aetna Life Ins. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 464, 81 L.Ed.2d 617 (1937) ("A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot."); *Speer*, 847 F.2d at 311 ("If we cannot now effect the requested relief, any opinion that this court might render on the underlying dispute would be merely advisory, for plaintiff may no longer have any legally cognizable interest in the outcome.") (citing *Powell v. McCormick*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969)); *compare County of Oakland*, 866 F.2d at 845 ("A dispute in which the interest of the complaining party is purely academic does not qualify as a case or controversy in the constitutional sense...."); *Campbell*, 829 F.2d at 580 ("Under Article III of the United States Constitution, federal courts sit to decide live, current controversies, and not to participate on constitutional questions that have become academic as far as the litigants are concerned.")

*WJW-TV, Inc.* 878 F.2d at 911–12; *accord Speer*, 847 F.2d at 312 n. 3 ("Plaintiff cannot avoid mootness by engaging in speculation that at some point in the future she may move and then return and seek to run for City Council and again be subjected to the residency requirement.") (citing *Sosna v. Iowa*, 419 U.S. 393, 400, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975)).

Alternatively, Tucker has argued that, although the appeal challenging the "90 day rule" may be moot as to his individual challenge, it is not moot as it applies to the Secretary in his representative capacity of UAW union members, citing this court's decision in *Speer*, wherein it is noted that:

The Supreme Court has held that a plaintiff who challenges the [validity of requirement for candidacy for elective office] may continue to litigate the suit as a class representative even after [his] individual claim becomes moot. *Sosna v. Iowa*, 419 U.S. 393, 399–400, 95 S.Ct. 553, 557–58, 42 L.Ed.2d 532 (1975); *cf. Dunn v. Blumstein*, 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 998 n. 2, 31 L.Ed.2d 274 (1972).

*Speer*, 847 F.2d at 311 n. 1. The argument ignores the Secretary's failure to have perfected a cross-appeal from the trial court's disposition of the challenge to the "90 day rule," thereby foreclosing him from addressing that issue before this court. In *Karcher v. May*, 484 U.S. 72, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987), the Supreme Court specifically rejected a similar argument, concluding that an intervening party who has acted only in an individual capacity cannot attempt to avoid a determination of mootness by invoking the standing of another party who had initiated the action in a representative capacity but who did not elect to pursue an appeal. *Karcher*, 484 U.S. at 79, 108 S.Ct. at 393 ("Karcher and Orechio may not appeal the Court of Appeals judgment ... as representatives of the 200th Legislature unless they participated in those capacities below."). Furthermore, in *Marshall*, this circuit specifically instructed that, in each instance, mootness must be determined with reference to the issues joined by the particular party perfecting the appeal. *Marshall*, 611 F.2d at 649 ("We conclude that the term 'complaining party' as used in *Weinstein*'s element (2) refers to the appellant in this court."). As in the case of *Speer*, Tucker "did not bring suit in a representative capacity," *Speer*, 847 F.2d at 311 n. 1, and cannot, at this juncture, attempt to assert "representative capacity" for purposes of his cross appeal.

■ In Cross–Appeal No. 88–1529, Tucker also challenged the district court's denial of his request for ancillary relief, directing the UAW International to reimburse the local unions for, *inter alia*, the costs of the new elections both for Region 5 local delegates and Regional Director. Existing precedent indicates that the part of Tuck-

er's appeal requesting review of the district court's denial of his motion for the imposition of ancillary costs upon the UAW is not moot. "The Supreme Court has recognized that even if the primary relief has been obtained, if secondary relief sought has not been obtained, that portion of the case related to the secondary relief is not moot." *Lowary*, 854 F.2d at 134 (citing *University of Texas v. Camenisch*, 451 U.S. 390, 394, 101 S.Ct. 1830, 1833, 68 L.Ed.2d 175 (1981)); *accord Ellis v. Brotherhood of Ry., Airline & S.S. Clerks*, 466 U.S. 435, 441–42, 104 S.Ct. 1883, 1889, 80 L.Ed.2d 428 (1984); *International Union, United Auto. Workers v. Dana Corp.*, 697 F.2d 718, 721 (6th Cir.1983) (en banc); *compare Crowell v. Mader*, 444 U.S. 505, 100 S.Ct. 992, 62 L.Ed.2d 701 (1980); *Constagny, Brooks & Smith ex rel. Teledyne Indus., Inc.*, 851 F.2d at 842.

While Tucker has correctly noted that the district court possessed the discretionary authority to have awarded the ancillary equitable relief requested, *i.e.*, to have imposed various costs associated with the election of the Director for UAW Region 5 upon the UAW International, the cross-appellant has failed to present any compelling argument or authority to persuade this court that the district court abused its broad discretion in denying that equitable relief in the case at bar. Moreover, despite Tucker's suggestion to the contrary, the continuing viability of a claim for an award of ancillary costs does not avert the mootness of underlying substantive issues. *See, e.g., S–1 v. Spanger*, 832 F.2d 294, 297 n. 1 (4th Cir.1987) ("The fact that the [parties] still assert a claim for costs and attorney's fees against [another party] does not avert mootness of the underlying action on the merits."); *see also Washington Market Co. v. District of Columbia*, 137 U.S. 62, 11 S.Ct. 4, 34 L.Ed. 572 (1890); *Monzillo v. Biller*, 735 F.2d 1456, 1463 (D.C.Cir.1984); *United States v. Ford*, 650 F.2d 1141, 1143 (9th Cir.1981), *cert. denied*, 455 U.S. 492, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982); *Doe v. Marshall*, 622 F.2d 118, 119–20 (5th Cir. 1980), *cert. denied*, 451 U.S. 993, 101 S.Ct. 2336, 68 L.Ed.2d 855 (1981). *Compare Crowell v. Mader*, 444 U.S. 505, 100 S.Ct.

992, 62 L.Ed.2d 701 (1980); *Constagny, Brooks & Smith ex rel. Teledyne Indus., Inc.*, 851 F.2d at 842; *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1200 (6th Cir.1974).

■ In Cross–Appeals Nos. 88–1803 and 88–1932, both the Secretary and Tucker have charged that the district court erred in dismissing their petition to compel the UAW to permit retired and laid-off members of UAW Local 25 to participate in the supervised reelection of delegates and Director for Region 5. In his petition of May 19, 1988, the Secretary argued before the district court that the UAW's determination to bar these members of union Local 25 from eligibility to participate in the rescheduled election was in violation of the LMRDA. On June 1, 1988, the district court dismissed the Secretary's argument, concluding that internal union administrative remedies had not been exhausted, precluding judicial review of the UAW's action concerning these retired and laid-off members of Local 25. On July 13, 1988, the court overruled motions to reconsider its denial of the Secretary's petition. Subsequent to the Secretary's and Tucker's cross appeals the court-ordered election of September 2, 1988 was conducted and Tucker defeated Worley for the position of Director of UAW Region 5 by 34 votes, a margin of victory greater than the total of 20 votes represented by the retired and laid-off members of Local 25; consequently, their combined vote would have not affected the outcome of the election. Accordingly, these cross appeals have become moot.

The Secretary and Tucker have, however, suggested that this issue survived the claim of mootness because it was "capable of repetition, yet evading review." Specifically, the Secretary and Tucker contend that there "was a reasonable expectation that the same complaining party would be subjected to the same action again," *Speer*, 847 F.2d at 311 (quoting *Weinstein*, 423 U.S. at 149, 96 S.Ct. at 348), because the UAW had again disenfranchised the same group of retired and laid-off employees of Local 25 during the recently conducted

1989 Regional director's election, held at the end of June, 1989. The suggestion is not well taken. Although the UAW did continue to adhere to its previously expressed policy of denying the franchise to these unemployed union members of Local 25, its action did not satisfy the "capable of repetition" element of the *Weinstein* standard because it does not, by itself, indicate that there was any *actionable* violation of Title IV of the LMRDA.

By its express terms, the LMRDA authorizes a "court [to] invalidate an election already held, and [to] order the Secretary to supervise a new election, only if the violation of Title IV 'may have affected the outcome' of the previous election." *Local No. 82, Furniture & Piano Moving, Local 82 v. Crowley*, 467 U.S. 526, 540, 104 S.Ct. 2557, 2565, 81 L.Ed.2d 457 (1984) (quoting § 402(c) of the LMRDA, 29 U.S.C. § 482(c)). In the 1989 Regional Director's election, Tucker was defeated by approximately a two to one margin of votes: 438.3 votes in favor of Wyse versus 233.3 votes in favor of Tucker. Accordingly, it would be highly speculative to suggest that the UAW's policy of denying the franchise to former employees of Local 25 had "affected the outcome" of the June 21, 1989 election of Wyse as the Regional Director of UAW Region 5.

An appellate court lacks jurisdiction to hear an appeal where the appellant's injury is not "likely to be redressed by a favorable decusion" by the reviewing court. *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976); *accord Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70, 104 S.Ct. 373, 375, 78 L.Ed.2d 58 (1983) ("We think that no resolution of the present dispute between these parties can redress the [appellant's] asserted grievance."); *Heimberger v. School Dist. of Saginaw*, 881 F.2d 242, 246 (6th Cir.1989) ("Because the plaintiffs have not shown a substantial probability that their claimed injuries will be redressed by [judicial review], we believe it would be contrary to

the grant of judicial power under article III for this court to exercise its remedial powers.") (footnote omitted); *Jaimes v. Toledo Metropolitan Housing Auth.*, 758 F.2d 1086, 1093 (6th Cir.1985) ("[T]here must be a substantial probability that the claimed injuries will be redressed by taking the action sought by the claimants.") Accordingly, because the events of the June 21, 1989 election did not demonstrate that the Secretary could, with reasonable probability, again be subjected to the same injury that precipitated the instant controversies, the appellant's proof fails to satisfy the "capable of repetition" element of the *Weinstein* test.

Furthermore, the Secretary and Tucker have failed to demonstrate that the UAW's policy of denying franchise to former members of Local 25 is necessarily "in its duration too short to be fully litigated prior to cessation or expiration." *Speer*, 847 F.2d at 311 (quoting *Weinstein*, 423 U.S. at 149, 96 S.Ct. at 348). Because elections for the position of UAW Regional Director are conducted every three years, and since the LMRDA specifically authorizes the district courts to vacate the results of a challenged election and to order a new election to be conducted under the supervision of the Secretary, it cannot seriously be argued that any future election violations could not be considered and effectively resolved by the federal courts within a three year time period if diligently pursued by the parties. *Cf. Deakins*, 484 U.S. at 200–01 nn. 4–5, 108 S.Ct. at 529 nn. 4–5; *WJW–TV, Inc.*, 878 F.2d at 911–12. Accordingly, the cross-appellants have failed to prove that the UAW's decision to disenfranchise the former union members of Local 25 is necessarily of such short duration as to be capable of "evading review."

Because the issues joined in these appeals have become moot, an appropriate disposition of this case "is to remand the decision of the lower court with 'instructions to vacate the judgment[s] below and dismiss the complaint[s].' " [7] *WJW–TV, Inc.*, 878 F.2d at 912 (quoting *Constangy, Brooks & Smith ex rel Teledyne Indus.*,

---

7. Tucker has suggested that, because he appealed the district court's denial of his request for an ancillary award of costs against the UAW,

this court should adopt the procedure employed in *Constangy, Brooks & Smith ex rel. Teledyne Indus., Inc.*, 851 F.2d at 842–43, and simply

*Inc.*, 851 F.2d at 842); *see also Deakins*, 484 U.S. at 199–202, 108 S.Ct. at 528–29; *Neighbors Organized to Insure a Sound Environment, Inc. v. McArtor*, 878 F.2d 174, 178 (6th Cir.1989). "That procedure clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance … [and] is commonly utilized … to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." *WJW–TV, Inc.*, 878 F.2d at 911 (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40–41, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950)); *Constagny, Brooks & Smith ex rel Teledyne Indus., Inc.*, 851 F.2d at 842; *see also Neighbors Organized to Insure a Sound Environment, Inc. v. McArtor*, 878 F.2d at 178.

Accordingly, the judgments of the United States District Court for Eastern District of Michigan are **VACATED** and **REMANDED** with instructions to dismiss the complaints.

dismiss this appeal for lack of jurisdiction, rather than vacating the district court's opinion and remanding with instructions to dismiss the complaint. The disposition in *Constangy, Brooks & Smith ex rel. Teledyne Indus., Inc.*, however, was specifically predicated, *inter alia*, upon the fact that the request for costs and attorney's fees was pending before the district court at the time of this circuit's appellate review. *Contangy,* *Brooks & Smith ex rel., Teledyne Indus., Inc.*, 851 F.2d at 842. In the case at bar, however, the district court has already ruled upon Tucker's request for the imposition of ancillary costs upon the UAW and, as such, no purpose would be served by merely dismissing this appeal without also vacating the underlying district court decision.